No. 13-1623

─────────────────────────────────────────────

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

─────────────────────────────────

UNITED STATES OF AMERICA
Plaintiff-Appellee,

v.

BRIAN FISHER,
Defendant - Appellant.

─────────────────────────────────

Appeal From The United States District Court
For The Western District of Michigan
(Northern Division)

─────────────────────────────────

## DEFENDANT – APPELLANT'S
## BRIEF ON APPEAL

─────────────────────────────────

RAY KENT
Federal Public Defender

PAUL A. PETERSON
Assistant Federal Public Defender
Office of the Federal Public Defender
P.O. Box 30
Negaunee, MI 49866
(906) 226-3050

# TABLE OF CONTENTS

**Page**

Index to Authorities............................................................. ii

Statement In Support of Oral Argument............................................. v

Jurisdictional Statement......................................................... 1

Statement of the Issue........................................................... 3

Statement of the Case............................................................ 4

Statement of Facts............................................................... 5

Summary of Argument.............................................................. 9

Argument......................................................................... 10

I.    **DESPITE THE ILLEGAL WARRANTLESS USE OF
      A GPS DEVICE, THE DISTRICT COURT STILL
      ERRORED IN DENYING MR. FISHER'S MOTION
      TO SUPPRESS BASED UPON THE GOOD FAITH
      EXCEPTION TO THE EXCLUSIONARY RULE AND
      MR. FISHER'S MOTION TO SUPPRESS MUST BE
      GRANTED, HIS SUBSEQUENT SENTENCING
      MUST BE SET ASIDE, AND THIS MATTER
      REMANDED FOR FURTHER PROCEED-
      INGS.**                                                                   10

Conclusion....................................................................... 33

Certificate of Compliance ....................................................... 34

Certificate of Service .......................................................... 34

Appellant's Designation of Record from District Court............................ 35

i

# TABLE OF AUTHORITIES

## SUPREME COURT CASES CITED                    PAGE

*Brown v. Illinois*,
    422 US 590, 604; 95 SCt 2254; 45 LEd2d 416 (1975)    10
*Coolidge v. New Hampshire*,
    403 US 443, 91 SCt 2022, 29 LEd 2d 564 (1971)    31
*Davis v. United States*,
    ___ US ___, 131 SCt 2419, 180 LEd2d 285 (2011)    passim
*United States v. Herring*,
    555 US 135, 129 SCt 695, 172 LEd2d 496 (2009)    27
*United States v. Jones*,
    ___ US ___, 132 SCt 945, 181 LEd2d 911 (2012)    passim
*United States v. Karo*,
    468 US 705, 104 SCt 3296, 82 LEd2d 530  (1984)    16
*United States v. Knotts*,
    460 US 276, 103 SCt 1081, 75 LEd2d 55 (1983)    16
*Wong Sun v. United States*,
    371 US 471, 83 SCt 407, 9 LEd2d 441 (1963)    31

## OTHER FEDERAL CASES CITED                    PAGE

*United States v. Andres*,
    703 F3d 828, (5th Cir. January 3, 2013)    21
*United States v Buford*,
    632 F3d 264 (6th Cir. 2011)    4,27,28
*United States v. Ford*,
    2012 WL 5366049 (ED Tenn 2012)    26-27
*United States v. Garcia*,
    474 F3d 994 (7th Cir. 2007)    15
*United States v. Gonzalez*,
    578 F3d 1130 (9th Cir 2009)    28
*United States v. Gordon*,
    2013 WL 791622 (ED MI March 4, 2013)    27
*United States v. Hernandez*,
    647 F3d 216 (5th Cir. 2011)    15

ii

## **OTHER FEDERAL CASES CITED (cont'd.)**          **PAGE**

*United States v. Lee*,
    862 FS2d 560 (ED Ky, 2012)                                25-26
*United States v. Marquez*,
    605 F3d 604 (8th Cir. 2010)                               15
*United States v. Martin*,
    712 F3d 1080 (7th Cir. March 25, 2013)                    21-22
*United States v. Maynard*,
    615 F3d 544 (DC Cir. 2010)                                16
*United States v. McIver*,
    186 F3d 1119 (9th Cir. 1999)                              15
*United States v. Pineda-Moreno*,
    591 F3d 1212 (9th Cir. 2010)                              15
*United States v. Pineda-Moreno*,
    617 F3d 1120 (9th Cir. 2010)                              15
*United States v. Pineda-Moreno*,
    688 F3d 1087 (9th Cir. 2012)                              21
*United States v. Shaw*,
    464 F3d 615 (6th Cir. 2006)                               32
*United States v. Shelburne*,
    2012 WL 2344457 (WD Ky, 2012)                             26
*United States v Shelton*,
    450 F App`x 574, 575 (9th Cir 2011)                       28
*United States v. Smith*,
    387 F Appx 918 (11th Cir. 2010)                           15
*United States v. Sparks*,
    711 F3d 58, (1st Cir. March 26, 2013)                     21
*United States v. Stewart*,
    12-1427, 2013 WL 4711054 (6th Cir. Sept. 3, 2013)         10
*United States v. Ventura*,
    2013 WL 1455278 (D MD Apr. 8, 2013)                       21
*United States v. Williams*,
    615 F3d 657 (6th Cir. 2010)                               31

**UNITED STATES CODE CITATIONS**                    **PAGE**

*18 USC § 3742*                                      1
*21 USC § 841(a)(1)*                                 5
*21 USC § 841(b)(1)(C)*                              5


**COURT RULE CITATIONS**                            **PAGE**

*FRCrimP 11(a)(2)*                                   1,9,33

*FRAP 2*                                             2
*FRAP 4(b)*                                          2
*FRAP 25(d)(1)(B)*                                   34
*FRAP 28(a)(4)*                                      1
*FRAP 32(a)(7)(B)*                                   34
*FRAP 34(a)(1)*                                      v

*6Cir.R.30(g)(1)(A)*                                 35
*6Cir.R.34(a)*                                       v

**OTHER CITATIONS**                                 **PAGE**

April A. Otterberg, Note, *GPS Tracking Technology:*
   *the Case for Revisiting* Knotts *and Shifting the*
   *Supreme Court's Theory of the Public Space Under*
   *the Fourth Amendment*, 46 BC L Rev 661 (2005)    15

Kyle Robbins, *Davis, Jones, and the Good-Faith Exception:*
   *Why Reasonable Police Reliance on Persuasive*
   *Appellant Precedent Precludes Application of the*
   *Exclusionary Rule*, 82 Miss. L.J. 1175 (2013)    17-20

iv

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Defendant-Appellant, Mr. Brian Fisher, in accordance with Federal Rule of Appellate Procedure 34(a)(1) and Sixth Circuit Rule 34(a), respectfully requests oral argument in this case.  Oral argument will give counsel the opportunity to elucidate on the issue before this Court and respond to any questions this Court may have.  The issue presented in this appeal involve critical concerns about the use of GPS monitoring and the suppression of evidence in a criminal proceeding, and oral argument would give the Court an opportunity to explore this issue further with counsel present.

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

                            COA File No.: 13-1623

v.                              Lower Court No.: 2:10-cr-00028-1

BRIAN FISHER,

        Defendant-Appellant.

**JURISDICTIONAL STATEMENT**

Pursuant to the requirements of *FRAP 28(a)(4)*, the following is provided regarding the issue of subject matter and appellate jurisdiction:

1.      This appeal seeks a review of the *Memorandum and Order* denying Mr. Fisher's motion to suppress and the subsequent *Amended Judgment in a Criminal Case* issued by United States District Judge R. Allan Edgar. Where, as here, a conditional plea is entered, this Court is authorized to review the reserved orders and sentences issued by the district courts of this circuit pursuant to *FRCrimP 11(a)(2)* and *18 USC §3742.*

2.      When his motion to suppress evidence was first denied by the district court, Mr. Fisher entered into a conditional *Plea Agreement* on February 14, 2011.

1

Pleading to knowingly and intentionally possessing with intent to distribute a controlled substance (cocaine), he was first sentenced on May 11, 2011, to a term of imprisonment of 33 months (along with other recommendations being made by the court to the Bureau of Prisons) to be followed by a term of supervised release of three years with a variety of conditions of supervision. An appeal was filed; and, on April 3, 2012, Mr. Fisher's judgment of conviction was vacated and this matter was remanded on stipulation of the parties in light of *United States v. Jones*, ___ US ___, 132 SCt 945, 181 LEd2d 911 (2012). Thereafter, Mr. Fisher's renewed motion to suppress was, on January 18, 2013, again denied by the district court based upon the "good faith exception" to the exclusionary rule. During his second and most recent sentencing conducted on April 30. 2103, Mr. Fisher was sentenced to a term of "time served" to be followed by a term of supervised release of three years with a variety of conditions of supervision. An *Amended Judgment in a Criminal Case* incorporating the terms of sentence, was filed that same day. On May 13, 2013, Mr. Fisher filed a *Notice of Appeal*. This notice was timely filed pursuant to *FRAP 2 and 4(b)*. This establishes the basis for jurisdiction in the Court of Appeals.

## STATEMENT OF THE ISSUE

**I.    DESPITE THE ILLEGAL WARRANTLESS USE OF A GPS DEVICE, DID THE DISTRICT COURT STILL ERROR IN DENYING MR. FISHER'S MOTION TO SUPPRESS BASED UPON THE GOOD FAITH EXCEPTION TO THE EXCLUSIONARY RULE THUS REQUIRING THAT MR. FISHER'S MOTION TO SUPPRESS BE GRANTED, HIS SUBSEQUENT SENTENCING BE SET ASIDE, AND THIS MATTER REMANDED FOR FURTHER PROCEEDINGS?**

The District Court, having for the second time denied Mr. Fisher's motion to suppress, would presumably answer this question "No."

The Government, having argued against the granting of Mr. Fisher's motion, would presumably answer this question "No."

The Defendant/Appellant, for the reasons set forth in this brief, answers this question "Yes."

## STATEMENT OF THE CASE

Filed following the Supreme Court's decision in *Jones*, at 132 SCt 945 and pursuant to a conditional *Plea Agreement* preserving this issue, this appeal seeks a review of the *Memorandum and Order* denying Mr. Fisher's motion to suppress and the subsequent judgment issued by District Judge Edgar. Mr. Fisher asks this Court to grant his motion to suppress, vacate his sentencing, and remand the case for further proceedings, including his right pursuant to *FRCrimP 11(a)(2)* to withdraw his plea.

Considering Mr. Fisher's renewed motion to suppress evidence obtained through the use of a GPS tracker installed without a warrant, District Judge Edgar denied the motion based upon the "good-faith" exception to the exclusionary rule.

In arriving at his legal conclusions, District Judge Edgar committed error. At the time of this GPS assisted search, the law on the use of GPS devices was not settled, but in flux. However, more significantly, based upon *Davis v. United States*, ___ US ___, 131 SCt 2419, 180 LEd2d 285 (2011) and *United States v Buford*, 632 F3d 264 (6th Cir. 2011), the investigating officers needed to have objectively reasonably relied on unequivocal binding in-circuit appellate precedent to avoid the application of the exclusionary rule. Because such precedent within this Circuit did not exist, no "good-faith" exception was available and Mr. Fisher's motion to suppress should have been granted.

4

## STATEMENT OF FACTS

On July 20, 2010, Mr. Fisher was charged in an *Indictment* alleging the 20-year felony of "possession with intent to distribute cocaine" in violation of *21 USC §§ 841(a)(1)* and *841(b)(1)(C)* [R. 4, *Indictment*, Page ID # 6]. Following an earlier trip to this Court and a stipulated remand (and based upon Mr. Fisher's original conditional plea), District Judge R. Allan Edgar sentenced Mr. Fisher on April 30, 2013, to "time served" and three years of supervised release [R. 109, *Sentencing Transcript*, pages 9-12; Page ID #622-625 and R. 106, *Amended Judgment in a Criminal Case*, pages 1-6; Page ID # 533-538].

From a review of "discovery" provided to the defense, it was understood that the local substance abuse enforcement unit ("UPSET") received information from an informant that Mr. Fisher would be leaving Escanaba, Michigan on Friday, June 11, 2010, to drive to Chicago. While in Chicago, the informant advised that Mr. Fisher would be picking up cocaine and then returning to the Upper Peninsula of Michigan. It was further understood that, thereafter and without a warrant, either UPSET or the DEA installed a real-time global-position-system (GPS) tracker on Mr. Fisher's vehicle; and this GPS tracking technology was then used to monitor Mr. Fisher's coming and going for, it appears, a period of time from at least Friday, June 11th to Monday, June 14th .

5

On June 14, 2010, a combination of DEA and UPSET, having used the tracking information produced by the GPS, stopped Mr. Fisher's vehicle in Menominee, Michigan, during his return trip from Chicago. Mr. Fisher and the passengers were removed from the vehicle and the vehicle was searched, including an area beneath the floor-mat of the trunk. This search included the use of a canine named "Rambo." The search revealed cocaine and three cellular phones. Mr. Fisher made certain statements following the seizure of this evidence. Based upon all of this, a *Criminal Complaint* was filed against Mr. Fisher on June 16, 2010 [R. 1, *Criminal Complaint*, Page ID # 1-3]; and his indictment followed on July 20, 2010.

Objecting to the warrantless installation of and tracking by a GPS monitor, Mr. Fisher filed *Defendant's Motion to Suppress Evidence and Memorandum in Support* on September 22, 2010 [R. 19, *Motion*, Page ID # 28-33]. Following extensive briefing and the holding of an evidentiary hearing, the district court adopted the *Report and Recommendation* issued by the magistrate judge and on February 11, 2011, denied Mr. Fisher's motion [R. 44, *Order Adopting Report and Recommendation*, Page ID # 145-165].

Preserving his right to appeal this suppression issue, Mr. Fisher entered a conditional plea of guilty on February 16, 2011 [R. 45, *Plea Agreement*, Page ID # 166-174]. Thereafter, Mr. Fisher was sentenced to 33 months of incarceration, along

6

with a term of supervised release and a special assessment, on May 11, 2011 [R. 62, *Judgment in a Criminal Case*, Page ID # 200-205]. Mr. Fisher appealed.

While this case was pending on appeal, the Supreme Court decided *United States v. Jones*, ___ US ___, 132 SCt 945, 181 LEd2d 911 (2012), which directly addressed the relevant GPS issue presented by this case. In light of *Jones* and the stipulation of the parties, this Court remanded the case to the district court on April 3, 2012 [R. 71, *Order*, Page ID # 372-373].

Once again, Mr. Fisher filed *Defendant's Motion to Suppress Evidence and Memorandum in Support on Remand* on June 29, 2012 [R. 77, *Motion*, Page ID #383-391].[1] Following further briefing and the holding of another evidentiary hearing, the district court eventually adopted a new *Report and Recommendation* issued by the magistrate judge and on January 18, 2013, once again denied Mr. Fisher's motion based upon the "good-faith" exception to the exclusionary rule [R. 98, *Memorandum and Order*, Page ID #504-511].[2]

---

1       During this time, Mr. Fisher was also returned from BOP custody and released on an unsecured appearance bond [R. 74, *Appearance Bond and Order Setting Conditions of Release*, Page ID #377-380].

2       Because the installation of a GPS monitor had been used in two separate cases, another federal drug prosecution involving GPS tracking had paralleled Mr. Fisher's case. While no current appeal was filed, that case entitled *United States v. Ashley Walker*, File # 2:10-cr-00032-1 was consolidated with the Fisher case for the purpose of arguing this suppression issue. *See:* R. 93,

Following a subsequent status conference during which Mr. Fisher advised the magistrate judge that he did not intend to seek to withdraw his conditional guilty plea, the magistrate judge issued a new *Report and Recommendation* recommending that the district judge issue an amended judgment identical to the original judgment with the understanding that Mr. Fisher still had the right to appeal the January 18th denial of his motion to suppress. *See:* R. 101, *Report and Recommendation*, Page ID #514-515. Citing the language of this Court's remand, as well as *Tapia* and *Peppers*, Mr. Fisher once again objected to the magistrate judge's recommendation; and recognizing Mr. Fisher's objections as "well-taken," the district judge ordered the matter set for a sentencing hearing. *See:* R. 103, *Order*, Page ID #522. Mr. Fisher's resentencing took place on April 30, 2013. District Judge Edgar, after listening to arguments from counsel and allocution from Mr. Fisher, imposed a sentence of "time served," along with a 3-year term of supervised release and a special assessment, concluding (as the government had also recommended):

> "I have talked with Probation. I should say I've talked to Probation about your progress. They are very high on and satisfied with what you have accomplished. And I'm particularly impressed with the fact that you're in school and doing well. Can't argue with that. And as I said earlier, this is what we hope for in all these cases. . . . I doubt at this point that any meaningful purpose would be served by any further incarceration. I don't think it would have a deterrent effect on you

_____

*Order of Consolidation*, Page ID #458-459.

8

because I think what you've already done has already had a deterrent effect."

R. 109, *Sentencing Transcript*, page 10; Page ID #623 and R. 106, *Amended Judgment in a Criminal Case*, pages 1-6; Page ID # 533-538.

Following the entry of the amended judgment, Mr. Fisher filed his *Notice of Appeal* on May 13, 2013 [R. 107, *Notice of Appeal*, Page ID #539]. Mr. Fisher is currently on supervised release and residing in the Upper Peninsula of Michigan.

## SUMMARY OF ARGUMENT

While this case has involved a number of different issues since it began over three years ago, only one question remains and it is the subject of this appeal: Did the district judge error in accepting the legal conclusions reached by the magistrate judge in his *Report and Recommendation* and in denying Mr. Fisher's motion to suppress because "[t]he good faith exception to the exclusionary rule applies in the present case[]"? Because Mr. Fisher submits that the answer to this question is "Yes," he asks this Court to grant his motion to suppress, vacate his sentencing, and remand the case for further proceedings, including his right pursuant to *FRCrimP 11(a)(2)* to withdraw his plea.

## ARGUMENT

**I.    DESPITE THE ILLEGAL WARRANTLESS USE OF A GPS DEVICE, THE DISTRICT COURT STILL ERRORED IN DENYING MR. FISHER'S MOTION TO SUPPRESS BASED UPON THE GOOD FAITH EXCEPTION TO THE EXCLUSIONARY RULE AND  MR. FISHER'S MOTION TO SUPPRESS MUST BE GRANTED, HIS SUBSEQUENT SENTENCING MUST BE SET ASIDE, AND THIS MATTER REMANDED FOR FURTHER PROCEEDINGS.**

**(a)    Standard of Review**

The *de novo* standard of review that is applicable here for the review of the

legal conclusions reached by District Judge Edgar was most recently summarized in

*United States v. Stewart*, 12-1427, 2013 WL 4711054, *5 (6th Cir. Sept. 3, 2013):

> "In considering the denial of a motion to suppress, we review the district court's findings of fact for clear error and its legal conclusions de novo. *United States v. Tackett,* 486 F.3d 230, 232 (6th Cir.2007). "When the district court has denied the motion to suppress, we review all evidence in a light most favorable to the Government." *United States v. Coffee,* 434 F.3d 887, 892 (6th Cir.2006) (internal quotation marks and citation omitted)."

Furthermore, when a warrantless search or seizure is challenged, the government bears

the burden of establishing its validity by a preponderance of the evidence. *Brown v.*

*Illinois*, 422 US 590, 604; 95 SCt 2254; 45 LEd2d 416 (1975).

**(b)    Legal Analysis**

10

1.      **Background – Because of *Jones* (as acknowledged by District Judge Edgar) and pursuant to *Davis*, officers must rely on binding appellate precedent to permit evidence seized by warrantless GPS surveillance to be admissible through the "good-faith" exception to the exclusionary rule.**

On April 30, 2012, Mr. Fisher's case was remanded by this Court back to the

district court to address certain issues in light of *Jones*, 132 SCt 945. Those issues

were:

- Whether the conclusions in *Jones* necessitate granting Mr. Fisher's motion to suppress;
- Whether the law enforcement officers involved in this case had an objectively reasonable basis for believing attachment of a GPS transmitter to the vehicle in question was authorized under precedent existing at that time;
- And if so, whether the good-faith exception to the warrant requirement applies;
- And whether the evidence in question inevitably would have been discovered.

In *Jones*, the Supreme Court held that government installation of a GPS on a target

vehicle and the use of that device to monitor the vehicle's movements constituted a

search for purposes of the Fourth Amendment. *Jones*, 132 SCt at 949. The Supreme

Court did not address the permissibility of the search without a warrant based on

reasonable suspicion and/or probable cause alone. *Id.* at 954. The government did not

raise such an argument in the lower court, so that argument was forfeited. *Id.*

Because the search in Mr. Fisher's case became unlawful under the Fourth

Amendment, the primary question then became (and as otherwise summarized in this

Case: 13-1623     Document: 006111818967     Filed: 09/15/2013     Page: 18

Court's remand *Order*) whether the law enforcement officers involved here had an objectively reasonable basis for believing attachment of a GPS transmitter to Mr. Fisher's vehicle was authorized under precedent existing at that time and, if so, whether the "good-faith" exception to that warrant requirement applies.  In his *Memorandum and Order*, District Judge Edgar concluded that the "good-faith" doctrine should apply and that Mr. Fisher's motion to suppress should once again be denied.  [R. 98, *Memorandum and Order*, Page ID #506-511].[3]

Following the *Jones* decision, federal courts across this country were immediately faced with a problem – how to handle the admissibility of evidence derived from a warrantless GPS search which occurred before *Jones*.  As was generally summarized in the remand *Order* and as later argued to District Judge

---

3    Alternatively, the magistrate judge's *Report and Recommendation* recommended granting, in part, the motion to suppress if the district judge found that the good-faith doctrine was inapplicable. Were the district judge to conclude that no warrant was required, but probable cause was required, the *Report and Recommendation* recommended granting Mr. Fisher's motion; but if only reasonable suspicion was determined to be necessary, then the motion should not be granted. The *Report and Recommendation* further recommended suppressing only the information gained through use of the GPS units should the district court grant the motion; it recommended against suppressing evidence found subsequent to the arrests.  *See:*  R. 95, *Report and Recommendation*, Page ID #491-492.  Mr. Fisher had objected to several of these recommendations; however, District Judge Edgar found it unnecessary to consider those objections because of his determination that the "good-faith" exception applied here [R. 98, *Memorandum and Order*, Page ID #511].

12

Edgar, other courts have generally turned to *Davis v. United States*, ___ US ___, 131 SCt 2419, 180 LEd2d 285 (2011) for assistance in answering this question. In *Davis*, the Supreme Court considered whether to suppress evidence found in a police search conducted "in compliance with binding precedent that [was] later overruled." *Davis*, 131 SCt at 2423; and the Supreme Court said:

> "Because suppression would do nothing to deter police misconduct in these circumstances, and because it would come at a high cost to both the truth and the public safety, we hold that searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule." *Id.* at 2423–24.[4]

Dealing first with the application of *Davis*, District Judge Edgar said:

> "While there was no binding Sixth Circuit precedent on the GPS issue at the time of the GPS tracking, other circuits had uniformly held that GPS tracking was not a Fourth Amendment search.
>
>        \*        \*        \*
>
> This Court agrees with Magistrate Judge Greeley's finding that the good faith exception should be applied in the present case[]. . . The Supreme Court's holding, therefore, apples to cases in which binding judicial precedent is present; it does not, in this Court's opinion, foreclose the possibility of the good faith exception being applied in cases where only non-binding precedent exists.
>
>        \*        \*        \*
>
> The precedent from the other court of appeals on the GPS issue, combined with the beeper cases, was sufficient to create an objectively reasonable good faith belief that the attaching of the GPS device[] was

---

[4] Significantly, in Justice Sotomayor concurring opinion she expressed her concern over the goals of the exclusionary rule being realized where the law is not settled. *Davis*, 131 SCt at 2435-36.

lawful. . . Law enforcement's reliance on existing precedent at the time of the GPS tracking was objectively reasonable, and its conduct fails to demonstrate the culpability necessary to justify the use of the exclusionary rule in the present case[]."  [R. 98, *Memorandum and Order*, Page ID #506-508].

Mr. Fisher submits that these legal conclusions are erroneous.

**2.      Contrary to the conclusion reached by District Judge Edgar, at the time of the GPS surveillance of Mr. Fisher, the law outside of the Sixth Circuit was unsettled, and the few circuits which had addressed this issue were split concerning the installation and use of GPS without a warrant.**

In Mr. Fisher's case, unlike in *Davis*, there was simply no binding Sixth Circuit precedent – a fact acknowledged by District Judge Edgar!  As a result, District Judge Edgar looked outside the circuit and concluded that "other circuits had uniformly held that GPS tracking was not a Fourth Amendment search."  But it is submitted that this "uniformly" held authority which District Judge Edgar relied upon simply did not exist!  Prior to *Jones*, federal circuit courts were divided on the constitutionality of these GPS tracking devices.  Jurists were arguing vehemently over this issue at this

14

time.[5]  In fact, this debate had raged for years; it was simply coming to head at the time officers used this new GPS tracking technology on Mr. Fisher.

In fact, only a small minority of the circuits had even addressed the issue.  As partially noted by District Judge Edgar, the Seventh, but also the Fifth and Ninth Circuits, had held that the use of GPS was not a search and, so, did not trigger Fourth Amendment protections. *United States v. Hernandez*, 647 F3d 216, 220 (5th Cir. 2011); *United States v. Garcia*, 474 F3d 994 (7th Cir. 2007); and *United States v. McIver*, 186 F3d 1119 (9th Cir. 1999).[6]  And, yes, the Eighth Circuit appears to have held that monitoring a GPS unit attached to a car for a reasonable period of time was a search, but could be supported by reasonable suspicion.  *United States v. Marquez*, 605 F3d 604 (8th Cir. 2010).[7]  Most significantly, however, the D.C. Circuit Court of Appeals had held that GPS tracking <u>was</u> a Fourth Amendment search requiring a

---

5    Furthermore, law reviews had been recording the debate for years.  *See, e.g.*, April A. Otterberg, Note, *GPS Tracking Technology: the Case for Revisiting* Knotts *and Shifting the Supreme Court's Theory of the Public Space Under the Fourth Amendment*, 46 BC L Rev 661 (2005).  States were requiring warrants. *Id.* at 680–82.

6    Despite its majority ruling, there was a strong dissent filed in *United States v. Pineda-Moreno*, 591 F3d 1212 (9th Cir. 2010), when rehearing was sought and denied.  *United States v. Pineda-Moreno*, 617 F3d 1120 (9th Cir. 2010).  Four judges participated in this dissent.  *Id.* (Kozinski, C.J., dissenting).

7    The Eleventh Circuit took a similar position with vehicles that were publically accessible in *United States v. Smith*, 387 F Appx 918 (11th Cir. 2010) (per curiam) (unpublished).

15

warrant. *United States v. Maynard*, 615 F3d 544 (DC Cir. 2010). Still, most of the courts of appeal, <u>including this Court,</u> had not yet addressed the issue; and they certainly had not "uniformly" agreed upon a position.

District Judge Edgar's reliance upon *United States v. Knotts*, 460 US 276, 103 SCt 1081, 75 LEd2d 55 (1983) *United States v. Karo*, 468 US 705, 104 SCt 3296, 82 LEd2d 530 (1984) is similarly problematic. Identified as the "beeper cases," both are now almost thirty years old and involved the use of beepers for limited real-time tracking rather then the twenty-four hour all invasive surveillance permitted through the use of GPS. Both involved the placement of beepers in containers which the respective defendants later took possession of. *Knotts*, 460 US at 278; *Karo*, 468 US at 708, 711. *Jones*, on the other hand, involved a trespass through the warrantless installation of a GPS device on an automobile in which the defendant had an interest; and this was found to be a critical distinction! *Jones*, 132 SCt at 948-49, 952. In *Jones*, Justice Scalia concluded that neither *Knotts* nor *Karo* authorized the warrantless, non-consensual installation of a beeper on a vehicle then owned or possessed by a particular defendant – alternatively, they dealt with privacy and consent issues. *Jones*, 132 SCt at 951-52. That being said, neither *Knotts* and *Karo* can provide the officers in this case with the requisite precedent upon which to have objectively relied in conducting the warrantless GPS search of Mr. Fisher.

16

**3.    Since the Supreme Court decision in *Jones*, this issue has remained unsettled with various district and circuit courts with some courts applying the exclusionary rule while others have invoked the "good-faith" exception.**

Still, what appears to have been given insufficient consideration by District Judge Edgar is that here within the Sixth Circuit, there was no binding precedent on which to rely. Simply moving on to out-of-circuit precedent, as he did, is not the answer. The need for binding <u>in-circuit</u> precedent, it is submitted, is extraordinarily significant because of the language of *Davis* [131 SCt at 2428] which approved of the application of the "good-faith" exception when "the officers' conduct was in strict compliance with <u>then-binding Circuit law</u> and was not culpable in any way." (Underlining Added).

> "The *Jones* decision left in jeopardy the admissibility of evidence obtained from GPS tracking. A number of cases on the issue of GPS tracking were still undecided when the *Jones* decision was reached. In light of the decision, defendants across the country filed motions to suppress GPS evidence against them. In the four circuits that had specifically ruled that GPS evidence did not violate the Fourth Amendment, trial courts, relying on *Davis*, denied the motions.
>
> Where appellate courts had not specifically addressed the issue at the time of the attachment, trial courts are splitting as to whether to exclude or allow the evidence, with at least five excluding and at least five admitting. In each of these cases, defendants filed motions to suppress GPS evidence in circuits that did not have precedent specifically allowing warrantless GPS attachment and tracking of vehicles at the time the search in question occurred. All of the decisions were reached in federal district courts.

## A. Cases that Suppressed GPS Evidence

In at least five cases, *United States v. Lujan* [2012 WL 2861546 (ND Miss 2012)], *United States v. Katzin* 2012 WL 1646894 (ED PA 2012)], *United States v. Ortiz* [878 FS2d 515 (ED PA 2012)], *United States v. Lee* [862 FS2d 560 (ED KY 2012)], and *United States v. Robinson* [2012 WL 4893643 (ED MO 2012)], courts suppressed the GPS evidence. . . .

Each of the cases focused extensively, and some almost exclusively, on the language of *Davis* requiring that precedent be binding in order for the good faith exception to apply. The court, in *Ortiz*, wrote "*Davis* does not refer to persuasive or well-reasoned precedent, permit reliance on a growing trend in decisions, or purport to apply to situations in which a plurality, majority, or even overwhelming majority of circuits agree. Instead, *Davis* states, repeatedly, that it applies to *binding* precedent." *Robinson* expressed a very similar opinion, adding that "[t]he language of *Davis* is narrow, and quite specific."

Several of the courts expressed concerns that could arise from extending the exception beyond binding authority. For example, multiple courts expressed the concern that applying the exception in the absence of binding authority could "effectively eviscerate the exclusionary rule." The court, in *Katzin*, acknowledged the decision of *United States v. Leon* and even conceded that "an argument could be made ... that the more general language found in *Davis* ... would allow for individualized determination" of objective reasonableness in each specific case. It determined, however, that such an interpretation of *Davis* posed too great a threat to the exclusionary rule.

Courts also expressed concern that expanding the good faith exception would allow officers to pick and choose which law to follow. According to the court in *Lee*, excluding evidence can "deter the officer who picks and chooses which law he wishes to follow" from "guessing at what the law might be." *Katzin* further stated that allowing such behavior would "encourage law enforcement to beg forgiveness rather than ask permission in ambiguous situations involving basic civil rights." *Ortiz*

articulated the same point by stating that when "different circuits are doing different things ... then you can't possibly think that this is good faith, it's willful blindness."

These courts did recognize, however, several factors that might suggest the good faith exception. Both *Lee* and *Ortiz* acknowledged that the officers who conducted the search acted in strict compliance with DEA policy. In fact, the court in *Lee* wrote that the officer acted "just as any police officer should" and *Ortiz* found that the agent "may well have believed he was acting lawfully." *Ortiz* also recognized the "unanticipated rationale of the *Jones* decision" and briefly mentioned Justice Breyer's dissent in *Davis*.

## B. Cases that Admitted the Evidence Under the Good Faith Exception

In at least five cases, *United States v. Leon* [856 FS2d 1188 (D HAW 2012)], *United States v. Baez* [878 FS2d 288 (D MASS 2012)], *United States v. Oladosu* [887 FS2d 437 (D RI 2012)], *United States v. Ford* [2012 WL 5366049 (ED TENN 2012), and *United States v. Rose* [2012 WL 4215868 (D MASS 2012)] courts admitted GPS evidence under the good faith exception. . .

A focus on the culpability discussion in *Davis* emerged as the most common theme among these cases. Each of the five cases discussed *Davis's* culpability language, with most of them citing it as the ultimate reason for the decision to admit the evidence. In *Leon*, for example, the court wrote that its determination must be "whether the agents exhibited 'deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights.'" *Oladosu* noted that "as much as defendant[s] ... latch[] on to the term binding appellant precedent as suggesting a limitation on the good faith rule, it was the 'absence of police culpability' that 'doom[ed] Davis's claim.'"

In relying on the *Davis* culpability language, the courts in *Leon* and *Rose* emphasized Justice Breyer's dissent in *Davis*.[99] Both quoted the section of the dissent in which Justice Breyer wrote, "[I]f the Court means what it now says" culpability would be determinative, and "an officer is no more culpable when precedent is "suggestive rather than binding." The court in *Rose* wrote, "This Court presumes that the Supreme Court meant

19

what it said."

The second most common argument among the courts was a rejection of a strict reading of the binding language in *Davis. Baez, Oladosu*, and *Ford* specifically articulated the argument, while it is arguably implicit in the other cases.  Although Baez argued that *Davis* should be limited to its precise holding, the trial court considered that interpretation "entirely too static an approach" and instead "appli[ed] the teachings of *Davis*." The court further stated that *Davis* demonstrates the Court's intention to severely limit the application of the exclusionary rule. Similarly, the court in *Ford* "believe[d] a rule limiting *Davis* to binding precedent ignores the underlying rationale in *Davis* and *Herring*." The Court in *Oladosu* opined that interpreting *Davis* as creating a strict limitation to cases of binding precedent results in a "rigid reading" that "cannot withstand scrutiny."

The courts emphasized several other arguments or factors supporting their decisions to admit evidence. *Leon* and *Rose* recognized reliance on *Knotts* as reasonable, with *Leon* stating that "the agents were certainly justified in relying on *Knotts* rationale" and *Rose* calling such reliance "a common-sense reading of Supreme Court doctrine." *Rose* raised two additional concerns that if officers have to wait until a circuit unequivocally rules on a specific issue, it would sometimes mean being "forced to wait decades to implement new technology," and that, under a strict reading of the binding language in *Davis*, courts would spend too much time trying to determine whether a set of facts is "sufficiently analogous" to be considered binding.  Several courts also expressed concerns that applying the exclusionary rule could result in making officers unduly cautious." (Citations Added, Footnotes Omitted).  Kyle Robbins, *Davis, Jones, and the Good-Faith Exception: Why Reasonable Police Reliance on Persuasive Appellant Precedent Precludes Application of the Exclusionary Rule*, 82 Miss. L.J. 1175, 1186-92 (2013).[8]

---

8    More recently, in *United States v. Ventura*, 2013 WL 1455278 (D MD Apr. 8, 2013) (unpublished), evidence derived from a warrantless GPS tracking device was suppressed because no binding appellate precedent from the Fourth Circuit

It appears that at the time of the Robbins' article the consideration of this issue had not yet peculated up to the appellate level. However, counsel is aware of one circuit which has addressed this question of pre-*Jones* warrantless GPS searches where, as here in the Sixth Circuit, there was <u>no binding appellate precedent</u> at the time of the search.[9] While ultimately ruling that the seizure was significantly "attenuated" from the installation of the GPS device, in *United States v. Martin*, 712 F3d 1080 (7th Cir. March 25, 2013) the Seventh Circuit said on pages 1081-1082:

> "On the limited remand, the district court concluded that, pursuant to *Davis v. *1082 United States,* —— U.S. ——, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011), suppression was not warranted because of the 'officer's good faith reliance on then-existing precedent.' With respect, we find that to be an unwarranted expansion of the Supreme Court's decision in *Davis* and not one that we should adopt in the present case. *Davis* expanded the good-faith rationale in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), only to 'a search [conducted] in objectively reasonable reliance on *binding appellate precedent,*' finding that this set of searches are not subject to the exclusionary rule. See *Davis,* 131 S.Ct. at 2434 (emphasis added). As Justice Sotomayor pointed out in her opinion concurring in the judgment, *Davis* "d[id] not present the markedly different question whether the exclusionary rule applies when the law governing the constitutionality

specifically authorized the search.

9    Although several other circuits have now also considered this issue of pre-*Jones* warrantless GPS searches pursuant to *Davis* and denied suppression, all have done so based upon prior binding appellate precedent within their respective jurisdiction. *See: United States v. Sparks*, 711 F3d 58, 63-67 (1st Cir. March 26, 2013); *United States v. Andres*, 703 F3d 828, 834-835 (5th Cir. January 3, 2013); and *United States v. Pineda-Moreno*, 688 F3d 1087, 1091 (9th Cir. 2012).

of a particular search is unsettled." 131 S.Ct. at 2435. The Supreme Court may decide to expand *Davis* in the coming years, but until it does so, we are bound to continue applying the traditional remedy of exclusion when the government seeks to introduce evidence that is the 'fruit' of an unconstitutional search. We reject the government's invitation to allow police officers to rely on a diffuse notion of the weight of authority around the country, especially where that amorphous opinion turns out to be incorrect in the Supreme Court's eyes.  Here, as Martin points out in his supplemental brief, there was no binding appellate precedent in the Eighth Circuit at the time that Iowa law enforcement officials attached the GPS device to Martin's car."

While recognizing that it was issued two months after he issued his *Memorandum and Order*, it is submitted that the legal authority District Judge Edgar should have followed supports the conservative line of reasoning expressed in *Martin*; and he should have concluded that the "good faith" exception could not be applied here because there was no "binding appellate precedent" in this Circuit, at the time of the search, authorizing the warrantless installation of the GPS device.

**4.    Because at the time of the GPS surveillance of Mr. Fisher, there was no unequivocal, binding Sixth Circuit precedent permitting the installation of a GPS device without a warrant, the "good-faith"exception to the exclusionary rule should not have been invoked by District Judge Edgar.**

Without direction on this issue from this Court, it appears that two separate analyses of this issue have developed at the district court level within this Circuit.  The first, which Mr. Fisher urged District Judge Edgar to adopt, but which was ignored, is found in *United States v. Lee*, 862 FS2d 560 (ED Ky, 2012).  In a case

22

extraordinarily similar to Mr. Fisher's which also involved the installation of a GPS

tracking unit on the defendant's vehicle, a monitored trip to Chicago, a later pretext

stop, and the seizure of drugs and the eliciting of confession, District Judge Thapar

said, in adopting the magistrate judge's report and granting the motion to suppress:

> "Even if suppression is justified, courts carve out a "good faith"
> exception from suppression for "objectively reasonable law enforcement
> activity." *Davis v. United States,* —— U.S. ——, 131 S.Ct. 2419, 2429,
> 180 L.Ed.2d 285 (2011). The rationale behind this exception is that "the
> harsh sanction of exclusion" will not deter officers who "act as a
> reasonable officer would and should act under the circumstances." *Id.*
> (internal quotation omitted).
>
>             *          \*          \**
>
> In everyday conversation, a person might say that the DEA agents in this
> case acted in good faith: they obeyed their agency's national policy and
> thought they were following the law. But legally, the good-faith
> exception does not apply whenever police officers believe they are
> following the law.
>
> Rather, the good-faith exception only protects conduct that is
> "objectively reasonable." *Leon,* 468 U.S. at 919, 104 S.Ct. 3405. When
> does police conduct meet this standard? In general, only when an
> (ultimately incorrect) legal authority approved of the officers' actions. .
> . . In all of these circumstances, a legal authority in the relevant
> jurisdiction—a magistrate, legislature, court employee, or appellate
> panel—provides its imprimatur for the search. If that authority's
> judgment is later overturned, the good-faith exception gives police
> officers a safe harbor. After all, police officers are not expected to have
> a comprehensive knowledge of the law, so they may reasonably rely on
> the decision of a judge or the actions of a legislature. The deterrence
> rationale "loses much of its force" in these contexts because police must
> rely on legal authorities, even when those authorities are ultimately
> incorrect. *Leon,* 468 U.S. at 919, 104 S.Ct. 3405 (quoting *United States
> v. Peltier,* 422 U.S. 531, 542, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975)). .
> . .

Binding appellate precedent is much the same: police "ac[t] as a reasonable officer would and should act" when they carry out a search based on a binding decision by their state's supreme court or the relevant federal court of appeals. *Davis,* 131 S.Ct. at 2429 (quoting *Leon,* 468 U.S. at 920, 104 S.Ct. 3405). Before the Supreme Court's *Davis* decision, the Sixth Circuit also emphasized that "precedent on a given point must be unequivocal" to suspend the exclusionary rule. *United States v. Buford,* 632 F.3d 264, 276 n. 9 (6th Cir.2011) (quoting *United States v. Davis,* 598 F.3d 1259, 1266 (11th Cir.2010)). And the Sixth Circuit was not alone.

*       *       *

Indeed, extending the good-faith exception would give police "little incentive to err on the side of constitutional behavior." *Davis,* 131 S.Ct. at 2435 (Sotomayor, J., concurring) (quoting *United States v. Johnson,* 457 U.S. 537, 561, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982)). If a police officer conducts a search based on a non-binding judicial decision—that is, an opinion by a trial court, an unpublished opinion by his own circuit's court of appeals, or a published opinion by another circuit's court of appeals—he is guessing at what the law might be, rather than relying on what a binding legal authority tells him it is. When a police officer follows binding law, suppression can only "discourage the officer from doing his duty.'" *Davis,* 131 S.Ct. at 2429 (quoting *Leon,* 468 U.S. at 920, 104 S.Ct. 3405). But suppression might deter the officer who picks and chooses which law he wishes to follow. *Cf. Davis,* 131 S.Ct. at 2435 (Sotomayor, J., concurring) ("[W]hen police decide to conduct a search or seize in the absence of case law (or other authority) specifically sanctioning such action, exclusion of the evidence obtained may deter Fourth Amendment violations.").

Limiting the good-faith exception to binding appellate precedent also promotes the "essential interest in readily administrable rules" to govern police. *Atwater v. City of Lago Vista,* 532 U.S. 318, 347, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001). When carrying out searches, federal officers need only know the binding decisions of the Supreme Court and their circuit's court of appeals. Conversely, expanding the exception to non-binding authority raises a host of questions. How many circuits must support a practice before an officer can rely on it in good faith? Two? Four? A majority? What if the judges on one panel are particularly well-

24

respected? What if others are not? And what if several district courts, but no courts of appeals, support a practice? Allowing officers to rely on non-binding authority raises all of these questions, but answers none of them. In theory, courts could impose a minimum quantity of non-binding authority before the good-faith exception applied—say, half of the courts of appeals. But why are seven courts of appeals necessarily more persuasive than six? Such a minimum would be nothing more than an arbitrary rule, plucked from thin air. *Cf. Maryland v. Shatzer,* 559 U.S. 98, 130 S.Ct. 1213, 1228, 175 L.Ed.2d 1045 (2010) (Thomas, J., concurring) ("[A]n otherwise arbitrary rule is not justifiable merely because it gives clear instruction to law enforcement officers."). Binding appellate precedent, on the other hand, is a simple limit that hews to the Supreme Court's *Davis* decision.

*        *        *

Unlike the officers in *Davis,* who "scrupulously adhered to governing law," the DEA agents in this case relied on no binding precedent. Instead, they relied on a national DEA policy. Again, the Court does not intend to disparage the DEA agents for following a policy crafted by their superiors. But that policy guessed—incorrectly—at how the Supreme Court might resolve an unsettled question of Fourth Amendment law. In the Fifth, Seventh, Eighth, or Ninth Circuits, that national policy was supported by binding appellate precedent. But in the Sixth, it was not. As a result, the DEA agents in this case did not act within the confines of the good-faith exception."[10]  *Lee*, 862 FS2d at 567-571.[11]

---

[10]  The appeal of the *Lee* decision by the government was voluntarily dismissed by the government on September 6, 2012.

[11]  Another district court within the Sixth Circuit considered this issue and positively cited *Lee* in reaching its conclusion.  *United States v. Shelburne*, 2012 WL 2344457 (WD Ky 2012).  While the *Shelbourne* court denied the motion to suppress, it did so because the GPS monitoring was initiated and run by police officers in *Indiana*, which is within the Seventh Circuit where there was binding precedent allowing the monitoring at the time.  *Id.* at *4.

Instead, District Judge Edgar went with the second analysis developed about five months later by his former colleague District Judge Collier in *United States v. Ford*, 2012 WL 5366049 (ED Tenn 2012). In denying defendant's motion to suppress evidence obtained following the surveillance and later arrest of a robbery suspect through the use of a GPS tracker, District Judge Collier concluded that the warrantless installation and use of the GPS tracking device was permitted. *Id.* at *11. While concluding that traditional warrant requirements are required in GPS cases and that the failure to obtain a warrant in that case violated the defendant's Fourth Amendment rights, District Judge Collier concluded that the exclusionary rule is still not generally applied "when the police act with an objectively 'reasonable good-faith belief' that their conduct is lawful." *Id.* at *8-*9. After acknowledging the *Davis* rule that reliance on binding precedent (even if later overruled) satisfies the "good-faith" exception and recognizing that there was no binding Sixth Circuit precedent that could have been relied upon, District Judge Collier concluded that the central question before him was:

> "Whether law enforcement's reliance on non-binding precedent in other circuits satisfies the good-faith exception has split a number of district courts facing the warrantless GPS device issue, with some concluding such reliance satisfies the good-faith exception, and others holding it does not." *Id.* at *9-*10.

26

Determining that reliance on three out of four out-of-circuit decisions rendered the officers warrantless use of GPS reasonable and consist with the underlying rationale of *Davis* and *Herring*,[12] District Judge Collier concluded that the officer's conduct was "insufficiently culpable to justify excluding the evidence [ ] later obtained."  Id. at *11.[13]

The reason why the *Lee* analysis should be adopted by this Court, rather than the *Ford* analysis, is that the later simply misapplies *United States v Buford*, 632 F3d 264 (6th Cir. 2011).  There this Court required "unequivocal" in-circuit precedent to invoke the "good-faith" exception.  The *Buford* court was clear that it was addressing "this circuit's well-settled case law," something that is simply <u>not</u> present in the case at hand.  *See:  Buford*, 632 F3d at 271.  In *Buford*, this Court also discussed out-of-circuit law applying the exclusionary rule in circumstances like these, citing, among others,  *United States v. Gonzalez*, 578 F3d 1130 (9th Cir 2009) in which the court suppressed the evidence despite circuit precedent that would have allowed the earlier search.  *Id.* at 272.[14]  While *Buford* ultimately rejected the *Gonzalez* reasoning, it

---

12    *United States v. Herring*, 555 US 135, 129 SCt 695, 172 LEd2d 496 (2009).

13    Two other district courts within the Sixth Circuit appear to have cited and agreed with *Lee*.  District Judge Edgar's decision in this case and District Judge Fox in *United States v. Gordon*, 2013 WL 791622 (ED MI March 4, 2013).

14    This *Gonzalez* decision was vacated in light of *Davis* after the government sought Supreme Court review.  *See:  United States v Shelton*, 450 F App`x 574,

emphasized that the officers had been acting in compliance with well-established circuit precedent. *Id.* at 273–74. And this Court was <u>emphatic</u> on that point:

> "Like the Eleventh Circuit, we also 'stress, however, that <u>our</u> precedent on a given point must be unequivocal before we will suspend the exclusionary rule's operation.'" (Underlining Added). *Id.* at 276 n.9.

This Court did not say "<u>any</u> precedent" or "<u>the</u> precedent," it said "<u>our</u> precedent!" Here there was no Sixth Circuit precedent explicitly and unequivocally permitting this GPS monitoring activity; and, because of that, the *Buford* decision makes it clear that the "good-faith" exception cannot be applied – the exclusionary rule must, therefore, be applied!

**5.    Summary – Because there was no binding in-circuit appellate precedent to trigger the "good-faith" exception to the exclusionary rule and because the benefits of deterrence of unlawful warrantless searches outweigh the costs of the application of the exclusionary rule, the seized evidence in this case should have been and must now be suppressed.**

Mr. Fisher submits that his motion to suppress should have be granted and that <u>all</u> evidence derived as a result of the illegal search should have been suppressed. Contrary to the legal conclusions arrived at by the magistrate judge and thereafter affirmed and adopted by District Judge Edgar, at the time of this search the law on the use of GPS devices was unsettled, at best. Still, the rule articulated in *Davis* could not

─────────────────

575 (9th Cir 2011).

28

have been any clearer – to trigger the "good-faith" exception to the exclusionary rule, there must be reliance on binding in-circuit appellate precedent. No alternate application for non-binding out-of-circuit precedent was espoused by Davis; yet that is what District Judge Edgar chose to employ! Given the unsettled nature of the law, the lack of unequivocal, binding, in-circuit precedent, and the gravity of the Fourth Amendment interests at stake, Mr. Fisher most strongly believes that the police were obligated to err on the side of caution and should have obtained a warrant. District Judge Edgar's decision to apply the good-faith exception to the exclusionary rule here was error.

Requiring police officers to rely on binding circuit court precedent to determine whether or not a warrant is required and to, thereby, potentially activate the "good-faith" exception is not at all unrealistic. When undertaking searches, all federal officers need know are the binding decisions of the Supreme Court and their circuit's court of appeals. If there is no binding circuit precedent on the issue, the solution is not to look out-of -circuit because, as District Judge Thapar pointed out in *Lee*, such an expansion raises many additional and far more difficult questions. If there is no binding circuit precedent on the issue, the solution is and has always been clear – the police should err on the side of caution and just obtain a warrant. It's not that hard! Mr. Fisher's case did not involve exigencies. There was no reason not to seek a

warrant in this case.  And this is, frankly, what the Supreme Court in *Davis* requires.

To hold otherwise would continue the evisceration of the Fourth Amendment through

more exceptions to the warrant requirement.  And a search without a warrant <u>will</u>

become the rule rather than just the exception:

> "Thus the most basic constitutional rule in this area is that 'searches
> conducted outside the judicial process, without prior approval by judge
> or magistrate, are per se unreasonable under the Fourth Amendment –
> subject only to a few specifically established and well delineated
> exceptions.  The exceptions are 'jealously and carefully drawn,' and
> there must be 'a showing by those who seek exemption * * * that the
> exigencies of the situation made that course imperative.  '(T)he burden
> is on those seeking the exemption to show the need for it.  In times of
> unrest, whether caused by crime or racial conflict or fear of internal
> subversion, this basic law and the values that it represents may appear
> unrealistic or 'extravagant' to some.  But the values were those of the
> authors of our fundamental constitutional concepts.  In times not
> altogether unlike our own they won – by legal and constitutional means
> in England, and by revolution on this continent – a right of personal
> security against arbitrary intrusions by official power.  If times have
> changed, reducing everyman's scope to do as he pleases in an urban and
> industrial world, the changes have made the values served by the Fourth
> Amendment more, not less, important." (Footnotes Omitted). *Coolidge
> v. New Hampshire*, 403 US 443, 454-55, 91 SCt 2022, 2032, 29 LEd 2d
> 564 (1971).

Contrary to the conclusion reached by District Judge Edgar, Mr. Fisher's case

is one where the police conducted an illegal search without reliance, reasonable or

otherwise, on any currently binding circuit precedent.  They did so without a warrant;

and, but for their illegal actions, there would have been no search and no discovery

of the evidence at issue.  As a result, the fruits of this illegal search must also be

suppressed, including the evidence seized as a result of the subsequent stop of the vehicle and the statements Defendant made following the illegal search and seizure. This Court has emphasized that the Supreme Court has directed that all evidence obtained through an unconstitutional search and seizure is not admissible in federal court, regardless of its origin. *United States v. Williams*, 615 F3d 657, 668 (6th Cir. 2010). This exclusionary rule is supplemented by the concept of the "fruit of the poisonous tree" – evidence obtained derivatively is likewise inadmissible. *Id.*[15] But for use of the GPS units here, authorities may not have been able to locate the Defendant and effect the arrest. The GPS tracking unit <u>was</u> the means of corroborating information provided by an informant and locating Mr. Fisher as he returned to the Upper Peninsula. There was no dissipation of the taint of the illegal

---

15    While it is recognized that should the taint of the illegality be sufficiently dissipated evidence may still be admissible, here there was no sufficient "intervening independent act of free will" to purge the taint of the illegality from the stop and search of his vehicle and the use of the GPS unit that all tainted Mr. Fisher's statements. *See: Wong Sun v. United States*, 371 US 471, 83 SCt 407, 9 LEd2d 441 (1963). Furthermore, the government bears the burden of proving "purgation" of such a taint. *United States v. Shaw*, 464 F3d 615, 626 (6th Cir. 2006). Showing a dissipation of the taint generally involves a showing of some significant intervening time, space, or event. *Id.* But given that the search and statements were so close in time and space to the illegal seizures and searches, it is submitted that no such dissipation occurred.

use of the GPS tracking units, so <u>all</u> evidence derived following the stop should now

be suppressed.

## CONCLUSION

Once again, the essential question here is:    Did the district judge error in accepting the legal conclusions reached by the magistrate judge in his *Report and Recommendation* and in denying Mr. Fisher's motion to suppress because "[t]he good faith exception to the exclusionary rule applies in the present case[]"?  The answer to this question is "Yes."  **WHEREFORE**, Mr. Fisher asks this Honorable Court to grant his motion to suppress, vacate his sentencing, and remand the case for further proceedings, including his right pursuant to *FRCrimP 11(a)(2)* to withdraw his plea.

**RESPECTFULLY SUBMITTED,**

RAY KENT
Federal Public Defender


Dated:  September 15, 2013      /s/ Paul A. Peterson
PAUL A. PETERSON
Assistant Federal Public Defender
Federal Public Defenders Office
P.O. Box 30
Negaunee, MI 49866
(906) 226-3050

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief complies with the type-volume limitation established by *FRAP 32(a)(7)(B)*. Relying on the "Properties - Information" provisions of the word-processing program (Corel WordPerfect X5) and excluding from the count the table of contents, the table of citations, the statement with respect to oral argument, the addendum containing the designation of the record from district court, and this certification, this brief contains 8488 words and 876 lines of text.

Dated: September 15, 2013        /s/ Paul A. Peterson
                                 PAUL A. PETERSON
                                 Assistant Federal Public Defender

_____

## CERTIFICATE OF SERVICE

It is hereby certified that:

(1)    On September 15, 2013, service of *Defendant-Appellant's Brief on Appeal*, was made upon opposing counsel Assistant United States Attorney, Mr. Maarten Vermaat, by filing the brief in accordance with the Sixth Circuit Guide to Electronic Filing; and

(2)    On September 16, 2013, service of *Defendant-Appellant's Brief on Appeal*, will be made upon the Defendant-Appellant, Mr. Brian Fisher, by placing a copy of the brief in an envelope addressed him as follows:  Mr. Brian S. Fisher, 4610 CR 444, Rock,  MI   49880 and depositing the envelope in the United States mail, postage prepaid.

This certificate is being provided In accordance with Guideline 10.1 of the Guide to Electronic Filing and *FRAP 25(d)(1)(B)*.

Dated: September 15, 2013        /s/ Paul A. Peterson
                                 PAUL A. PETERSON
                                 Assistant Federal Public Defender

34

# APPELLANT'S DESIGNATION
# OF RECORD FROM DISTRICT COURT

Appellant, pursuant to Sixth Circuit Rule 30(g)(1)(A), hereby designates the following filings in the district court's record as items relevant to the disposition of this appeal.

## Pleadings

| Docket Entry No. | Document | Date | Pg. ID # |
|---|---|---|---|
| R. 1 | *Criminal Complaint* | 06/16/2010 | 1-3 |
| R. 4 | *Indictment* | 07/20/2010 | 6 |
| R. 19 | *Motion to Suppress Evidence* | 09/22/2010 | 28-33 |
| R. 44 | *Order Adopting Report and Recommendation* | 02/11/2011 | 145-165 |
| R. 45 | *Plea Agreement* | 02/14//2011 | 166-174 |
| R. 62 | *Judgment in a Criminal Case* | 05/13/2011 | 200-205 |
| R. 71 | *Order* | 04/03/2012 | 372-373 |
| R. 74 | *Appearance Bond and Order Setting Conditions of Release* | 05/18/2012 | 377-380 |
| R. 77 | *Motion* | 06/29/2012 | 383-391 |
| R. 93 | *Order of Consolidation* | 11/02/2012 | 458-459 |
| R. 98 | *Memorandum and Order* | 01/18/2013 | 504-511 |

| R. 101 | *Report and Recommendation* | 01/25/2013 | 514-515 |
| R. 103 | *Order* | 02/11/2013 | 522 |
| R. 106 | *Amended Judgment in a Criminal Case* | 04/30/2013 | 533-538 |
| R. 21 | *Notice of Appeal* | 10/04/2012 | 539 |

## Transcripts of Hearings

| Docket Entry No. | Document | Date | Pg. ID # |
| --- | --- | --- | --- |
| R. 109 | *Sentencing Transcript* | 05/23/2013 | 615-626 |