No. 13-1623
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

BRIAN FISHER,
Defendant-Appellant.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIEF FOR APPELLEE
UNITED STATES OF AMERICA

PATRICK A. MILES, JR.
United States Attorney

SALLY J. BERENS
Assistant United States Attorney

Post Office Box 208
Grand Rapids, Michigan 49501-0208
(616) 456-2404

# <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ................................................................... iii

STATEMENT REGARDING ORAL ARGUMENT ................................. vi

ISSUES PRESENTED ............................................................................ 1

STATEMENT OF THE CASE ................................................................ 2

STATEMENT OF THE FACTS ............................................................. 3

SUMMARY OF THE ARGUMENT ...................................................... 10

ARGUMENT ........................................................................................ 12

    I.    *JONES* DOES NOT REQUIRE SUPPRESSION HERE
        BECAUSE THE GOOD-FAITH EXCEPTION APPLIES.... 12

        A.    Standard of Review ...................................................... 12

        B.    *Jones* .......................................................................... 12

        C.    Law Enforcement Acted in Good Faith in Relying on
              the Weight of the Authority regarding GPS
              Trackers ....................................................................... 15

             1.    The good-faith exception applies unless "a
                  reasonably well trained officer would have known
                  that the search was illegal in light of all the
                  circumstances." ................................................... 15

             2.    The *Davis* factors do not require suppression.... 18

        D.    Exclusion Here Is Inappropriate under *Herring* and
             *Davis*.......................................................................... 39

    II.    SUPPRESSION OF THE EVIDENCE WAS LIKEWISE
        UNWARRANTED UNDER THE INEVITABLE
        DISCOVERY DOCTRINE. ................................................... 40

CONCLUSION ........................................................................... 45

CERTIFICATE OF SERVICE................................................... 46

CERTIFICATE OF COMPLIANCE........................................ 47

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS . 48

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## Cases

*Air Pollution Variance Bd. of Colo. v. W. Alfalfa Corp.*,
    416 U.S. 861 (1974) .................................................................... 21

*Arizona v. Evans*, 514 U.S. 1 (1995)......................................................... 16

*California v. Ciraolo*, 476 U.S. 207 (1986).............................................. 22

*Cardwell v. Lewis*, 417 U.S. 583 (1974) .................................................. 22

*Davis v. United States*, 131 S. Ct. 2419 (2011) ............................... passim

*Dow Chem. Co. v. United States*, 476 U.S. 227 (1986) ........................... 22

*Florida v. Riley*, 488 U.S. 445 (1989) ...................................................... 22

*Herring v. United States*, 555 U.S. 135 (2009) ............................... passim

*Hester v. United States*, 265 U.S. 57 (1924)........................................... 21

*Katz v. United States*, 389 U.S. 347 (1967).............................................. 13

*Kyllo v. United States*, 533 U.S. 27 (2001)............................................... 22

*Massachusetts v. Sheppard*, 468 U.S. 981 (1984) ................................... 28

*Murray v. United States,* 487 U.S. 533 (1988)........................................ 42

*New York v. Class*, 475 U.S. 106 (1986)................................................... 22

*Nix v. Williams,* 467 U.S. 431 (1984) ....................................................... 42

*Texas v. Brown*, 460 U.S. 730 (1983) ....................................................... 22

*United States v. Alexander,* 540 F.3d 494 (6th Cir. 2008) ..................... 42

*United States v. Andres*, 703 F.3d 828 (5th Cir. 2013)........................... 32

*United States v. Baez*, 878 F. Supp. 2d 288 (D. Mass. 2012).................. 31

*United States v. Buford*, 632 F.3d 264 (6th Cir. 2011) ........................... 38

*United States v. Cassity*, 720 F.2d 451 (6th Cir. 1983) ........................... 23

*United States v. Ford*, 2012 WL 5366049
    (E.D. Tenn. Oct. 30, 2012) ...................................................... 33, 39

*United States v. Forest*, 355 F.3d 942 (6th Cir. 2004) ........................... 23

*United States v. Garcia*, 474 F.3d 994 (7th Cir. 2007) .......................... 24

*United States v. Garza*, 10 F.3d 1241 (6th Cir. 1993) ........................... 12

*United States v. Gordon*, 2013 WL 791622
    (E.D. Mich. March 4, 2013) .................................................... 30, 39

*United States v. Hill*, 195 F.3d 258 (6th Cir. 1999) ............................... 12

*United States v. Howard,* 621 F.3d 433 (6th Cir. 2010) .................. 41, 42

*United States v. Janis*, 428 U.S. 433 (1976) .......................................... 16

*United States v. Jarrell*, 68 F. App'x 622 (6th Cir. 2003) ...................... 39

*United States v. Jones*, 131 S. Ct. 3064 (2011) ...................... 2, 12, 13, 14

*United States v. Karo*, 468 U.S. 705 (1984) ............................... 11, 19, 20

*United States v. Katzin*, 732 F.3d 187 (3d Cir. 2013) .................... passim

*United States v. Knotts*, 460 U.S. 276 (1983) ................................. passim

*United States v. Lee*, 274 U.S. 559 (1927) .............................................. 21

*United States v. Lee*, 862 F. Supp. 2d 560 (E.D. Ky. 2012) ............. 34, 44

*United States v. Leon*, 468 U.S. 897 (1984) .................................... passim

*United States v. Leon*, 856 F. Supp. 2d 1188 (D. Hawaii 2012) ............ 32

*United States v. Lopez,* 895 F. Supp. 2d 592 (D. Del. 2012) .................. 32

*United States v. Luna-Santillanes*, 2012 WL 1019601
    (E.D. Mich. March 26, 2012) ......................................................... 34

*United States v. Marquez*, 605 F.3d 604 (8th Cir. 2010) ........................24

*United States v. Martin*, 712 F.3d 1080 (7th Cir. 2013)............. 37, 38, 44

*United States v. Maynard*, 615 F.3d 544 (D.C. Cir. 2010).....................25

*United States v. McIver*, 186 F.3d 1119 (9th Cir. 1999) ........................25

*United States v. Michael*, 645 F.2d 252 (5th Cir. 1981) .........................21

*United States v. Moore*, 562 F.2d 106 (1st Cir. 1977).............................21

*United States v. Oladosu*, 887 F. Supp. 2d 437 (D.R.I. 2012) ...............30

*United States v. Ortiz*, 878 F. Supp. 2d 515 (E.D. Pa. 2012).................44

*United States v. Pineda-Moreno*, 591 F.3d 1212 (9th Cir. 2010)............24

*United States v. Richardson*, 510 F.3d 622 (6th Cir. 2007)....................41

*United States v. Robinson*, 903 F. Supp. 2d 766 (E.D. Mo. 2012) .........31

*United States v. Rodriguez-Suazo*, 346 F.3d 637 (6th Cir. 2003)...........12

*United States v. Rose*, 914 F. Supp. 2d 15 (D. Mass. 2012).. 18, 29, 30, 32

United States v. Sparks, 711 F.3d 58 (1st Cir. 2013)..............................32

*United States v. Taylor*, __ F. Supp. 2d __, 2013 WL 5817246
    (S.D. Ind. Oct. 29, 2013) ...................................................................34

*United States v. Ward*, 831 F.2d 298, 1987 WL 44469
    (6th Cir. Oct. 5, 1987)......................................................................24

## Other Authorities

Fed. R. Crim. P. 41(b) advisory comm. note (2006) ..........................11, 26

### STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Sixth Circuit Rule 34(a)(1), Appellee United States of America requests oral argument because this appeal presents a legal issue of first impression:  whether the district court correctly denied Defendant Fisher's motion to suppress under the good-faith exception to the exclusionary rule where officers installed a GPS device on his car without a warrant prior to *United States v. Jones*, 131 S. Ct. 3064 (2011), and in reliance on analogous Supreme Court and Sixth Circuit precedent, unanimous out-of-circuit precedent, the Advisory Committee Notes to the Federal Rules of Criminal Procedure, and advice sought from prosecutors and at law enforcement trainings.

# ISSUES PRESENTED

1.    Did the district court err in denying Defendant Fisher's motion to suppress under the good-faith exception to the exclusionary rule where, prior to *United States v. Jones*, 131 S. Ct. 3064 (2011), police placed a GPS tracking device on Fisher's car without a warrant, relying on analogous Supreme Court and Sixth Circuit precedent, unanimous out-of-circuit precedent, the Advisory Committee Notes to Federal Rule of Criminal Procedure 41(b), trainings, and consultations with attorneys?

2.    Was denial of the suppression motion independently justified because the police stopped and searched Fisher's car based on information independent of the GPS data and therefore discovery of the evidence in the car was inevitable?

## STATEMENT OF THE CASE

A federal grand jury returned an indictment charging Defendant Fisher with possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).  (R.4: Indictment.)  Fisher moved to suppress evidence he claimed resulted from the warrantless use of a slap-on GPS device to track his vehicle.  The district court conducted an evidentiary hearing and denied the motion.  Fisher entered a conditional guilty plea and appealed the denial of the suppression motion.

Subsequently, the Supreme Court decided *United States v. Jones*, 131 S. Ct. 3064 (2011), and pursuant to a stipulation by the parties, this Court remanded the case to consider the effect of *Jones* on the suppression issue.  The district court held another evidentiary hearing and again denied the suppression motion, holding that the good-faith exception to the exclusionary rule applied.  (R.98: 1/18/2013 Order.)

Fisher filed this timely appeal.

## STATEMENT OF THE FACTS

In late April 2010, special agents from the Drug Enforcement Administration ("DEA") and detectives from the Upper Peninsula Substance Enforcement Team ("UPSET") developed a confidential source of information ("CS-1"), who said that Defendant Brian Fisher, Tina Garcia (Fisher's girlfriend), and Patrick Wayne Bridges were involved in cocaine trafficking and that their sources included persons in Chicago, Illinois, and Lansing, Michigan. (R.95: Report and Recommendation ("R&R"), ID#469.)

In late May 2010, CS-1 advised officers that Fisher was planning to drive to Lansing on May 28 to pick up cocaine and would return to Escanaba on May 29. (R.95: R&R, ID#469.) At that time, officers knew Fisher drove a white, four-door Oldsmobile. (*Id.*) An UPSET detective attached a Guardian GPS unit and battery pack to the bumper of the Oldsmobile on May 28. (R.69: Suppression Hrg Tr., ID#321-22.) UPSET and DEA used software to track the location of the unit that is designed to provide the unit's location whenever queried by a telephone signal as long as the unit's battery has not run low, and the unit is within range of a cellular telephone tower. (R.30: Response to Mtn to

3

Suppress, ID#54-55.)  Officers were able to confirm that Fisher's vehicle was driven to Lansing on May 28 and returned to Escanaba on May 29 by both GPS information and physical surveillance.  (R.95: R&R, ID#469; R.111: 10/11/12 Evid. Hearing, ID#638; R.69: 12/17/10 Evid. Hearing, ID#323-24.)  In addition, surveillance officers observed Fisher meeting with Patrick Wayne Bridges at his residence in Escanaba following Fisher's return.  (R.69: 12/17/10 Evid. Hearing, ID#324.)

Several days later, on June 4, 2010, an UPSET detective changed the battery pack attached to the GPS unit.  (R.69: 12/17/10 Evid. Hearing, ID#324.)

In early June 2010, CS-1 told officers that Fisher and Garcia were planning a trip to Chicago to pick up cocaine.  (R.95: R&R, ID#469; R.69: 12/17/10 Evid. Hearing, ID#325.)  CS-1 provided officers with information regarding: (1) the car to be driven, (2) who would be traveling, (3) the date and time of departure, and (4) the expected return date.  (R.111: 10/11/12 Evid. Hearing, ID#642; R.69: 12/17/10 Evid. Hearing, ID#325, 328, 356.)

The trip unfolded as CS-1 described, with Fisher leaving on June 11, driving to a residence in Escanaba, and then driving down to

4

Chicago.  (R.69: 12/17/10 Evid. Hearing, ID#325-26.)  Using 10 to 12 vehicles, DEA and UPSET officers performed physical surveillance on Fisher's car from Escanaba to the outskirts of Chicago.  (*Id*.; R.111: 10/11/12 Evid. Hearing, ID#638-40, 650.)  Officers briefly lost visual contact with the car in Escanaba, and the GPS device was queried to assist them in regaining contact.  (R.111: 10/11/12 Evid. Hearing, ID#639.)[1]  While in Chicago, officers used GPS and physical surveillance to determine where Fisher arrived.  (R.111: 10/11/12 Evid. Hearing, ID#650; R.69: 12/17/10 Evid. Hearing, ID#335-36, 338.)

Fisher returned, as predicted by CS-1, on June 14 and was stopped by police, who discovered cocaine in his car.[2]  (*Id*.)  Officers used GPS approximately five times to check Fisher's location.  (R.111: 10/11/12 Evid. Hearing, ID#670.)  DEA began physical surveillance in Oconto, Wisconsin, just south of Green Bay along U.S. 41 using two vehicles.  (R.111: 10/11/12 Evid. Hearing, ID#640-41.)  Two or three

---

[1] The officers used the GPS device sparingly because live tracking drained the battery, and they were concerned that the battery would run out before the vehicle returned to Escanaba.  (R.111: 10/11/12 Evid. Hearing, ID#642; R.69: 12/17/10 Evid. Hearing, ID#328, 356.)

[2] Fisher does not argue that police lacked reasonable suspicion to stop his car or that they lacked probable cause to search the car after a drug sniffing dog alerted to the presence of narcotics in the vehicle.

additional vehicles were set up in Menominee, Michigan, just on the other side of the Michigan border.  (R.111: 10/11/12 Evid. Hearing Tr., ID#641.)  While U.S. 41 is the primary travel route from Chicago to Escanaba, and CS-1 had given detailed route information, Michigan State Police Trooper James Maki testified that the GPS system allowed them to determine when they should set up physical surveillance because the system sent a message when Fisher's vehicle passed a "fence" (a line pre-programmed into the map) after he left Chicago. (R.111: 10/11/12 Evid. Hearing Tr., ID#641-44.)

Fisher was arrested and on June 15, 2010, was charged by criminal complaint.  (R.1: Complaint.)  A federal grand jury subsequently returned an indictment charging him with possessing a controlled substance with intent to distribute in violation of 21 U.S.C. § 841(a)(1).  (R.4: Indictment.)  Fisher moved to suppress the evidence seized from his car, arguing that the warrantless installation of the GPS device was an unreasonable search under the Fourth Amendment. (R.19: Mtn to Suppress.)  A magistrate judge conducted a hearing and issued a report and recommendation recommending that the district court deny the motion on the basis that use of the GPS device did not

constitute a "search," citing Supreme Court precedent holding that law enforcement's use of "beepers" to track movements of a suspect did not constitute a search for purposes of the Fourth Amendment.  (R.40: 1/11/11 R&R.)  The district court adopted the report and recommendation and denied Fisher's suppression motion.  (R.44: 2/11/11 Order.)  Fisher thereafter pled guilty pursuant to a conditional plea agreement that preserved his ability to appeal the district court's suppression ruling. (R.45: Plea Agreement.)

Fisher appealed, and while that appeal was pending in this Court, the Supreme Court issued its decision in *United States v. Jones*, 132 S. Ct. 945 (2012).  On the parties' stipulation, this Court remanded the case to the district court to determine the impact of *Jones*.

On remand, Fisher again moved to suppress the evidence based on the officers' use of the GPS tracking device.  (R.77: Mtn to Suppress.) At the suppression hearing, the officers testified that they did not believe a warrant was required at the time they installed the GPS unit and used it to assist them in locating Fisher's car.  (R.111: 10/11/12 Suppression Hearing Tr., ID#635-36, 662-664, 675.)  Trooper James Maki testified that he had received training from the Drug Enforcement

7

Administration regarding the use of GPS trackers.  (R.111: 10/11/12

Suppression Hearing Tr., ID#635-36.)  He also had spoken with the

Delta County prosecutor regarding the issue.  (R.111: 10/11/12

Suppression Hearing Transcript, ID#636.)  In addition, he believed, but

was not certain, that he had reviewed the guidelines for acceptable GPS

tracker use with an Assistant United States Attorney in the Western

District of Michigan.  (R.111: 10/11/12 Suppression Hearing Tr.,

ID#635-36.)  Trooper William Luebs testified that he had attended DEA

trainings covering legal installation of GPS devices, as well as one given

by the Milwaukee drug task force, and had spoken to state court

prosecutors regarding GPS cases.  (R.111: 10/11/12 Suppression

Hearing Tr., ID#662-64.)  He also sought advice from the Michigan

State Police legal department.  (R.111: 10/11/12 Suppression Hearing

Tr., ID#664.)  Sergeant Ron Koski likewise testified that he received

training on the law regarding GPS device use when police first received

the GPS unit and that it was covered again in their basic narcotics

school.  (R.111: 10/11/12 Suppression Hearing Tr., ID#675.)  He also

testified to discussions with prosecutors during which he was advised

that no search warrant was necessary if the device was not hardwired

into the vehicle.  (R.111: 10/11/12 Suppression Hearing Tr., ID#675.)
The officers had used GPS devices many times over a 10-year period
without a suppression motion being filed.  (R.111: 10/11/12 Suppression
Hearing Tr., ID#634, 661, 674.)

The district court agreed with the report and recommendation of
the magistrate judge and found that the good-faith exception to the
exclusionary rule applied and that therefore evidence resulting from use
of the GPS tracking device need not be suppressed.  (R.95: Report &
Recommendation; R.98: Order Adopting Report & Recommendation.)
Neither the magistrate judge nor the district court reached the
government's alternative argument that the motion should be denied
based on the inevitable discovery doctrine.

Fisher filed this timely appeal.

## SUMMARY OF THE ARGUMENT

The parties agree that *Jones* clarified that the placement of a GPS tracking device on Fisher's vehicle constituted a search under the Fourth Amendment.  Fisher argues that, because no binding Sixth Circuit precedent held that placement of a GPS tracking device was not a Fourth Amendment "search," the good-faith exception to the exclusionary rule does not apply.

At the time that law enforcement placed a GPS tracking device on Fisher's car, a reasonably well-trained officer would not have known that the use of the device was illegal in light of all the circumstances.  Nor does the record indicate that the officers acted with "deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights." *Herring v. United States*, 555 U.S. 135, 144 (2009) (internal quotation marks omitted).  Although Fisher points out that a circuit split existed prior to *Jones*, there was no such split at the time the officers installed and used the GPS unit in this case.  At that time, every circuit that had decided the issue had determined that using a GPS device in this manner either was not a "search" requiring application of the Fourth Amendment or required only reasonable suspicion.  That authority,

paired with the Supreme Court's decisions in *United States v. Knotts*, 460 U.S. 276 (1983), and *United States v. Karo*, 468 U.S. 705 (1984), (the "beeper cases") justified the conclusion that tracking a vehicle with an electronic device did not require a search warrant. Moreover, the Advisory Committee's Notes to Federal Rule of Criminal Procedure 41(b) confirmed that use of a GPS tracker under the circumstances involved here did not require a warrant, and the officers had consulted with attorneys and received training confirming the unequivocal state of the law at that time.

Even without binding Sixth Circuit precedent on which to rely, law enforcement officers acted with an objectively reasonable, good-faith belief that their conduct was lawful when attaching a GPS unit to Fisher's car. The district court properly held that the exclusionary rule should not be applied in this case.

In addition, even without any of the data received from the GPS tracker, the officers in this case had received sufficient information from a confidential informant, which they had then corroborated with physical surveillance, to support the search of Fisher's vehicle. The discovery of the cocaine was inevitable and exclusion was not required.

## ARGUMENT

### I.    *JONES* DOES NOT REQUIRE SUPPRESSION HERE BECAUSE THE GOOD-FAITH EXCEPTION APPLIES.

#### A.    Standard of Review

On appeal from the denial of a motion to suppress evidence, this Court reviews factual findings for clear error and legal conclusions or mixed questions of law and fact de novo.  *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003); *see also United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999).  When reviewing the denial of a motion to suppress, the Court considers evidence in the light most favorable to the government.  *United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir. 1993).

#### B.    *Jones*

In *United States v. Jones*, 132 S. Ct. 945 (2012), the Supreme Court held "that the Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search'" within the meaning of the Fourth Amendment.  *Id*. at 949 (footnote omitted).  Because the government had installed a GPS tracking device on the undercarriage of Jones's vehicle without a valid warrant and had then monitored the vehicle's

location by means of satellite signals over the course of 28 days, the Court affirmed the suppression of the GPS-derived locational data. The Court did not consider whether reasonable suspicion could have supported the search because the government had not raised that argument in the court of appeals. *Id*. at 954.[3]

Although all nine Justices agreed that the evidence should be suppressed, the Court relied on a common law trespass theory, while the concurring Justices relied on a theory based on interference with a reasonable expectation of privacy. The opinion for the Court held that a Fourth Amendment search takes place when, "as here, the Government obtains information by physically intruding on a constitutionally protected area...." *Jones*, 132 S. Ct. at 951 n.3. The Court did not analyze whether a search had occurred under the reasonable-expectation-of-privacy test established in *Katz v. United States*, 389 U.S. 347 (1967), finding instead that "a classic trespassory search" had occurred. *Jones*, 132 S. Ct. at 954. Prior to *Katz*, the Court explained, its "Fourth Amendment jurisprudence was tied to common-law

---

[3] Likewise, here, the government did not argue, and the district court did not address, whether something less than a warrant would support the search.

13

trespass….” *Id.* at 949.  The *"Katz* reasonable-expectation-of-privacy test has been *added to*, not *substituted for*, the common-law trespassory test.” *Id.* at 952 (emphasis in original).

*Katz* thus “did not erode the principle ‘that, when the Government *does* engage in physical intrusion of a constitutionally protected area in order to obtain information, that intrusion may constitute a violation of the Fourth Amendment.’” *Id.* at 951 (quoting *United States v. Knotts*, 460 U.S. 276, 286 (1983) (Brennan, J., concurring) (emphasis in original)).  “By attaching the [GPS] device to the [vehicle],” the Court concluded, “officers encroached on a protected area.” *Jones*, 132 S. Ct. at 952.  The vehicle is an “effect,” and “[t]he Fourth Amendment protects against trespassory searches … with regard to those items (‘persons, houses, papers, and effects’) that it enumerates.” *Id.* at 953 & n.8.

**C.    Law Enforcement Acted in Good Faith in Relying on the Weight of the Authority regarding GPS Trackers.**

    **1.    The good-faith exception applies unless "a reasonably well trained officer would have known that the search was illegal in light of all the circumstances."**

The finding of a Fourth Amendment violation "does not necessarily mean that the exclusionary rule applies." *Herring*, 555 U.S. at 140.  The exclusionary rule is a "prudential doctrine" utilized to "compel respect for the constitutional guaranty" embodied in the Fourth Amendment." *Davis v. United States*, 131 S. Ct. 2419, 2426 (2011). Suppression of evidence obtained through a violation of the Constitution is "not a personal constitutional right, nor is it designed to redress the injury occasioned by an unconstitutional search." *Id.* (internal quotations omitted).

In *Davis*, the Supreme Court explained the purpose of the exclusionary rule and stated factors that a court must consider when deciding whether to suppress evidence resulting from a Fourth Amendment violation.  The Court noted that the exclusionary rule's "sole purpose . . . is to deter future Fourth Amendment violations." 131 S. Ct. at 2426.  But application of the exclusionary rule is not warranted "in every circumstance in which it might provide marginal deterrence."

15

*Herring*, 555 U.S. at 141.  And, "[w]here suppression fails to yield

'appreciable deterrence,' exclusion is 'clearly . . . unwarranted.'"  *Davis*,

131 S. Ct. at 2426 (quoting *United States v. Janis*, 428 U.S. 433, 454

(1976)).  Because "[e]xclusion exacts a heavy toll on both the judicial

system and society at large," the Supreme Court has held that its

application is "a last resort."  *Davis*, 131 S. Ct. at 2427.

In announcing these principles in *Davis*, the Supreme Court noted

that it had abandoned the "old, 'reflexive' application of the doctrine,

and imposed a more rigorous weighing of its costs and deterrence

benefits."  *Id.* at 2427 (quoting *Arizona v. Evans*, 514 U.S. 1, 13 (1995)).

This analysis focuses "on the 'flagrancy of the police misconduct' at

issue."  *Id.* (quoting *United States v. Leon*, 468 U.S. 897, 911 (1984)).

> The basic insight of the *Leon* line of cases is that the
> deterrence benefits of exclusion "var[y] with the culpability
> of the law enforcement conduct" at issue.  When the police
> exhibit "deliberate," "reckless," or "grossly negligent"
> disregard for Fourth Amendment rights, the deterrent value
> of exclusion is strong and tends to outweigh the resulting
> costs.  But when the police act with an objectively
> "reasonable good-faith belief" that their conduct is lawful, or
> when their conduct involves only simple, "isolated"
> negligence, the "'deterrence rationale loses much of its
> force,'" and exclusion cannot "pay its way."

16

*Davis*, 131 S. Ct. at 2427-28 (internal citations omitted).  Quoting *Leon*,
the Court stated that "the harsh sanction of exclusion 'should not be
applied to deter objectively reasonable law enforcement activity.'"  *Id*. at
2429 (quoting *Leon*, 468 U.S. at 919).

The touchstone for the good-faith exception is "'the objectively
ascertainable question whether a reasonably well trained officer would
have known that the search was illegal' in light of 'all of the
circumstances.'"  *Herring*, 555 U.S. at 145 (quoting *Leon*, 468 U.S. at
922 n.23); *see also Davis*, 131 S. Ct. at 2427-28.

Fisher correctly points out that *Davis* held that the good-faith
exception applied where officers conducted a search in objectively
reasonable reliance on binding appellate precedent.  131 S. Ct. at 2423-
24.  However, *Davis* did not rule out the possibility that the test
announced in that opinion and in *Herring* could allow for application of
the good-faith exception where the case law approving the officers'
conduct was not binding or when other factors supported the notion
that "a reasonably well trained officer would have known that the

17

search was illegal' in light of 'all of the circumstances.'" *Herring*, 555
U.S. at 145 (quoting *Leon*, 468 U.S. at 922 n.23).[4]

> ### 2.    The *Davis* factors do not require suppression.

Applying the *Davis* factors to this case, suppression is
unwarranted.  The officers acted upon an objectively reasonable and
good-faith belief that their use of a GPS tracker without a warrant was
lawful.  A survey of the legal landscape at the time leads to the
inescapable conclusion that GPS tracker use did not constitute a search
under the Fourth Amendment (or, at most, required reasonable
suspicion).  In addition, the officers testified that they had received
training by the DEA and others on the issue and consulted with
prosecutors and received advice that comported with pre-*Jones* law.

---

[4] Fisher argues that Justice Sotomayor's concurrence in *Davis* suggests
that *Davis* should not apply where there was no binding appellate
precedent.  Op. Br. at 13, 21, 24.  First, a concurrence does not set out
the opinion of the Court.  *See United States v. Rose*, 914 F. Supp. 2d 15,
23 (D. Mass. 2012) (abrogated on other grounds by *United States v.
Sparks*, 711 F.3d 58 (1st Cir. 2013)).  Second, her concurrence focuses
on whether the exclusionary rule could "reasonably be expected to yield
appreciable deterrence."  *Davis*, 131 S. Ct. at 2436.  As discussed below,
the facts of this case indicate that exclusion would not have a deterring
effect.  *See also Rose*, 914 F. Supp. 2d at 23-24.

### a. The available case law supported the officers' belief that use of a GPS device did not implicate Fourth Amendment concerns.

The landmark decisions in *United States v. Knotts*, 460 U.S. 276 (1983), and *United States v. Karo*, 468 U.S. 705 (1984), inform the analysis of what legal framework guided the conduct in this case.  In *Knotts*, Minnesota law enforcement officers used an electronic beeper to conduct surveillance on the car of a suspect in a narcotics operation. 460 U.S. at 277-80.  In rejecting the defendant's Fourth Amendment challenge, the Supreme Court held that this "amounted principally to the following of an automobile on public streets and highways" and that a "person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another" and instead "voluntarily convey[s] to anyone who want[s] to look" his location, progress, and route.  *Id.* at 281-82.  *Karo* subsequently clarified that the use of beepers to monitor cars and other objects was not without limits, and officers could rely on *Knotts* only in situations in which officers employ electronic devices to obtain information that could otherwise be obtained through visual surveillance in public places.  468 U.S. at 714.

19

Those cases did not decide, however, whether the *installation* of a beeper constituted a Fourth Amendment search.  In neither case did the officers install the beeper themselves.  Rather, in each instance the beeper was placed in a container with the permission of the container owner, and the defendant received the container not knowing that the tracking device was inside.  *Knotts*, 460 U.S. at 278; *Karo*, 468 U.S. at 708.  *Karo* held that for officers to arrange for a suspect's receipt of an item containing a beeper, even without knowledge that the beeper is inside, "infringed no privacy interest."  468 U.S. at 712.  The Court further reasoned that "[a]t most, there was a technical trespass on the space occupied by the beeper," but "[t]he existence of a physical trespass is only marginally relevant to the question of whether the Fourth Amendment has been violated…for an actual trespass is neither necessary nor sufficient to establish a constitutional violation."  *Id.* at 712-13.  "[A]ny impairment of…privacy interests that may have occurred was occasioned by the monitoring of the beeper," rather than its installation.  *Id.* at 713.

The Fifth Circuit followed that logic in holding that installation of a beeper on a suspect's vehicle (as opposed to concealment in a

container that the suspect ultimately received) based on reasonable suspicion was lawful (and explicitly did not reject the view that it was not a search or seizure at all).  *United States v. Michael*, 645 F.2d 252, 256-58 (5th Cir. 1981) (en banc).  In a pre-*Knotts* and *Karo* case, the First Circuit also approved warrantless installation of a beeper on a van, noting that there was no valid distinction between beepers placed in a package received by the defendant and those affixed to a vehicle's underbody—in both instances, the beeper was put into the defendants' possession without his "acquiescence or knowledge."  *United States v. Moore*, 562 F.2d 106, 111 n.2 (1st Cir. 1977).

The *Knotts* Court also based its holding on the well-established "open fields" doctrine, *see Air Pollution Variance Bd. of Colo. v. W. Alfalfa Corp.*, 416 U.S. 861, 864-65 (1974); *United States v. Lee*, 274 U.S. 559, 563 (1927); *Hester v. United States*, 265 U.S. 57, 59 (1924), in stating that the beeper's ability to enhance visual surveillance was of no consequence.  *Knotts*, 460 U.S. at 282 ("Nothing in the Fourth Amendment prohibited the police from augmenting the sensory faculties bestowed upon them at birth with such enhancement as science and technology afforded them in this case.").  The Supreme

21

Court held similarly as to other technological enhancements of visual surveillance. *See Florida v. Riley*, 488 U.S. 445, 450 (1989) (aerial surveillance from helicopter not a search); *Dow Chem. Co. v. United States*, 476 U.S. 227, 238-39 (1986) (aerial photographs taken from an airplane not a search); *California v. Ciraolo*, 476 U.S. 207, 211-14 (1986) (same); *Texas v. Brown*, 460 U.S. 730, 739-40 (1983) (plurality opinion) (using flashlight to look into car interior at night not a search); *but cf. Kyllo v. United States*, 533 U.S. 27, 33-35 (2001) (use of infrared light technology to detect heat waves radiating off a home is a search because that information "could not otherwise have been obtained without physical intrusion into a constitutionally protected area" and "the technology in question [was] not in general public use").

Before *Jones*, the Supreme Court had held that persons did not enjoy a reasonable expectation of privacy in the exterior of their automobiles. *New York v. Class*, 475 U.S. 106, 114 (1986); *Cardwell v. Lewis*, 417 U.S. 583, 591 (1974) (no reasonable expectation of privacy when a car "travels public thoroughfares where its occupants and its contents are in plain view").

22

The Sixth Circuit recognized these concepts in its application of *Knotts* and *Karo* to pre-*Jones* caselaw.  In *United States v. Cassity*, 720 F.2d 451 (6th Cir. 1983), law enforcement officers had utilized electronic beepers to track the movements of defendant's vehicle on open highways when highway surveillance was interrupted and to locate the vehicle when they had lost track of it.  This Court interpreted *Knotts* as holding that the use of electronic beepers installed in personal property to monitor activities open to public inspection did not implicate the Fourth Amendment, although it held that beeper surveillance of noncontraband personal property in private areas (such as inside a home) was a Fourth Amendment search.  In another case, the Court explained that, in *Knotts*, the Supreme Court found that the police "had not invaded the defendants' legitimate expectation of privacy because '[t]he governmental surveillance conducted by means of the beeper in this case amounted principally to the following of an automobile on public streets and highways. . . . A person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another.'"  *United States v. Forest*, 355 F.3d 942, 950-951 (6th Cir. 2004) (citations omitted), *vacated on Booker*

*grounds*, 125 S. Ct. 1050 (2005); *see also United States v. Ward*, 831 F.2d 298, 1987 WL 44469, *2 (6th Cir. Oct. 5, 1987) (holding use of a beeper to track a car's movements was not a search under the Fourth Amendment).

Based on *Knotts* and *Karo*, at the time the stop in this case was conducted in June 2010, three circuits—every circuit that had addressed the issue—had held that use of a GPS device to track a vehicle on public streets did not require a warrant. *See United States v. Garcia*, 474 F.3d 994, 997-98 (7th Cir. 2007) (noting that "GPS tracking is on the same side of the divide with surveillance cameras and satellite imaging, and if what they do is not searching in Fourth Amendment terms, neither is GPS tracking"); *United States v. Pineda-Moreno*, 591 F.3d 1212, 1213, 1216-17 (9th Cir. Jan. 11, 2010) (holding that GPS monitoring of a vehicle over a four-month period was not a Fourth Amendment search); *United States v. Marquez*, 605 F.3d 604, 609 (8th Cir. May 21, 2010) (holding that GPS installation and use requires only reasonable suspicion because "[a] person traveling via automobile on public streets has no reasonable expectation of privacy in his movements from one locale to another"); *United States v. McIver*, 186

24

F.3d 1119, 1126-27 (9th Cir. 1999) (holding that GPS installation and use was not a search).[5]

In *United States v. Maynard*, 615 F.3d 544 (D.C. Cir. 2010), the D.C. Circuit became the first circuit to reach a different conclusion.  But that case was not decided until August 6, 2010—almost two months after the traffic stop and arrest here.

### b. The Advisory Committee's Notes to the Federal Rules of Criminal Procedure supported the officers' belief that use of a GPS device did not implicate Fourth Amendment concerns.

At the time that the GPS device was used in this case, the Advisory Committee's Notes to Federal Rule of Criminal Procedure 41(b) stated that "[w]arrants may be required to monitor tracking devices when they are used to monitor persons or property in areas where there is a reasonable expectation of privacy."  Fed. R. Crim. P. 41(b) advisory comm. note (2006) (citing *Karo*, 468 U.S. 705).  The note instructs that "if the officers intend to install or use the device in a constitutionally protected area, they must obtain judicial approval to do

---

[5] For a detailed discussion of the pre-*Jones* case law, see *United States v. Katzin*, 732 F.3d 187, 225-31, 232-39 (3d Cir. 2013) (Van Antwerpen, J., dissenting).

so." *Id.* "If, on the other hand, the officers intend to install the device without implicating any Fourth Amendment rights, there is no need to obtain the warrant." *Id.* (citing *Knotts*, 460 U.S. 276).

### c. Suppression in this case yields little deterrence.

Suppression here would not deter future violations of the Fourth Amendment because the officers' actions appeared to comport with binding appellate precedent, including the Supreme Court's decisions in the beeper cases. A reasonably well-trained officer is not tasked with predicting the future, including that the D.C. Circuit's opinion in *Maynard* and the Supreme Court's decision in *Jones* would limit the beeper cases based on how the tracking mechanism comes into the suspect's possession.

As of June 2010, Supreme Court and circuit court precedent, as well as the Advisory Committee's Notes to the Federal Rules of Criminal Procedure, uniformly held or suggested that installation of a slap-on GPS device on a suspect's car did not require a warrant so long as the car was in an area generally open or visible to the public rather than a constitutionally protected area. Before *Maynard* was decided on August 6, 2010, no court of appeals had held that a warrant was

required for GPS monitoring of a vehicle, and at least five circuits had

allowed the placement of a beeper or GPS on a suspect's vehicle without

a warrant despite the physical trespass that formed the basis for the

Supreme Court's opinion in *Jones*.  On this legal landscape, the police

did not exhibit deliberate, reckless, or grossly negligent disregard for

Fourth Amendment rights in placing the GPS unit on Fisher's vehicle.

As the Supreme Court noted in *Davis*, "when the police act with

an objectively reasonable good-faith belief that their conduct is lawful,

when their conduct involves only simple, isolated negligence, the

deterrence rationale loses much of its force, and exclusion cannot pay its

way."  131 S. Ct. at 2427-28.  Here, the officers' failure to anticipate

that their case was materially different from the facts of the beeper

cases is not even negligent.  Several federal appellate judges agreed.

Excluding evidence does not deter police misconduct when the officers

who obtained that evidence reasonably believed that their behavior

conformed to rules the Supreme Court had previously announced.

Moreover, quite apart from *Davis*, the Supreme Court has

repeatedly held that a police officer is entitled to rely on factual and

legal decisions by courts and should not be penalized if those decisions

are later found to be incorrect. *See, e.g., Leon*, 468 U.S. at 920-921 (exclusionary rule does not apply "when an officer acting in objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope. … Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations."); *Massachusetts v. Sheppard*, 468 U.S. 981, 987-988 (1984) (same). The Court has also held that good-faith reliance on non-judicial information may, in some circumstances, preclude suppression. *See Herring*, 555 U.S. at 147-148 ("police mistakes," such as recordkeeping error that led officer to incorrectly believe arrest warrant was still valid, may support application of good-faith exception). A police officer's reasonable reliance on the views of federal courts concerning the meaning of the Fourth Amendment supports the application of the good-faith exception for the same reasons.

There are also practical reasons to reject limiting *Davis* as Fisher suggests. As Justice Breyer recognized in his dissent, the bright line rule is unworkable in practice, requiring lower courts to analyze whether a situation is sufficiently analogous to a previous case to be

28

considered "binding." *Davis*, 131 S. Ct. at 2437 (Breyer, J., dissenting). This analysis would take the place of "a rigorous, cost-benefit analysis focused on the deterrence value of suppression, as *Davis* instructed." *Rose*, 914 F. Supp. 2d at 23. As Justice Breyer noted, "an officer who conducts a search that he believes complies with the Constitution but which, it ultimately turns out, falls just outside the Fourth Amendment's bounds is no more culpable than an officer who follows erroneous 'binding precedent.'" *Davis*, 131 S. Ct. at 2437. Moreover, if law enforcement were required to wait for each individual circuit to weigh in on new technology, "police in some jurisdictions would be forced to wait decades to implement new technology or risk suppression even where, as here, the warrantless use of the technology was universally considered to be constitutionally permissible." *Rose*, 914 F. Supp. 2d at 23.

> **d. The *Davis* and *Herring* tests focus on the totality of the circumstances, not the presence or absence of binding appellate precedent.**

Since *Davis*, courts have split over whether the good-faith exception applies absent binding appellate precedent in circuits that had not decided whether installation of a slap-on GPS device implicated

Fourth Amendment issues.  The better reasoned decisions consider the test set out in *Davis* and review the culpability of the police conduct at issue considering all of the circumstances, rather than focusing on any one factor.

For example, in *United States v. Gordon*, 2013 WL 791622 (E.D. Mich. March 4, 2013), the Eastern District of Michigan declined to apply the exclusionary rule, because it found that "the officers' conduct…was neither deliberate, reckless nor grossly negligent." *Id.* at *7.  Rather, the court found that the officers "had an objectively reasonable basis" for their conclusion that the attachment of the GPS device to the defendant's car was permissible under the Fourth Amendment because "at the time the GPS devices were attached to the vehicles, the United States Courts of Appeals uniformly held that such conduct did not constitute a search under the Fourth Amendment," and "*Jones* represents an unexpected development that has shifted law enforcement's understanding of the Supreme Court's prior holdings in the electronic beeper cases."  *Id.* at *8; *see also Rose*, 914 F. Supp. 2d at 24; *United States v. Oladosu*, 887 F. Supp. 2d 437, 448 (D.R.I. 2012) (court must conduct "a case-by-case assessment of the legal landscape

at the time of the Fourth Amendment violation at issue") (abrogated by *Sparks*, 711 F.3d at 65); *but see United States v. Robinson*, 903 F. Supp. 2d 766, 782-83 (E.D. Mo. 2012) (collecting cases).

In *United States v. Baez*, 878 F. Supp. 2d 288 (D. Mass. 2012), the court considered a case in which a GPS tracker was installed on August 27, 2009, and maintained on the vehicle until August 9, 2010, three days after the *Maynard* decision. *Id.* at 291. The court discussed the state of the law while the officers in the case were using the tracker and reached the following conclusion:

> Given the vast weight of authority—albeit not formally binding in the First Circuit—permitting warrantless GPS monitoring until *Jones* was handed down, it is apparent the Baez investigators were acting in good faith when they made use of that technique.

*Id.* at 293. In denying the motion to suppress, the court found that there would be no benefit to suppressing the evidence obtained through use of the tracker. *Id.* at 297. Subsequently, in *United States v. Sparks*, the First Circuit held that binding appellate precedent was required, but that there was sufficient precedent to render the good-faith exception applicable because of the Supreme Court's decision in *Knotts*, coupled with the First Circuit's 1977 holding in *Moore* that the

31

installation of the beeper was a trespass "so minimal as to be of little consequence." 711 F.3d at 65 (citing *Moore*, 562 F.2d at 111).[6]

Similarly, in *United States v. Leon*, 856 F. Supp. 2d 1188 (D. Hawaii 2012), the court considered a motion to suppress based on *Jones* where the agents used a GPS tracker prior to the Ninth Circuit's decision in *United States v. Pineda-Moreno*, 591 F.3d 1212 (9th Cir. 2010). In denying the motion, the court noted that "the agents were certainly justified in relying on *Knotts's* rationale in determining that no warrant was required." 856 F. Supp. 2d at 1193-94. The court further stated: "Given the state of the law in 2009, the court simply finds no sufficiently culpable conduct by the agents." *Id.* at 1194-95; *see also Rose*, 914 F. Supp. 2d at 24; *United States v. Lopez,* 895 F. Supp. 2d 592 (D. Del. 2012).

---

[6] Similarly, in *United States v. Andres*, 703 F.3d 828 (5th Cir. 2013), the Fifth Circuit held that its prior decision holding that reasonable suspicion was "adequate to support warrantless beeper installation on a suspect's vehicle parked in a private place" was sufficient binding appellate precedent to invoke the good-faith exception to the exclusionary rule. *Id.* at 834-35 (citing *United States v. Michael*, 645 F.2d 252, 257 (5th Cir. 1981) (en banc)). That court did not decide whether the good-faith exception applied absent binding appellate precedent.

Even where circuit court precedent was *not* unanimous, courts have looked to the culpability of the officers' actions and refused to apply the exclusionary rule.  In *United States v. Ford*, where the GPS device was used after *Maynard* but before *Jones*, the district court applied *Davis*, holding that "the exclusionary rule generally applies where police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, but not when the police act with an objectively reasonable good-faith belief that their conduct is lawful." 2012 WL 5366049, *9 (E.D. Tenn. Oct. 30, 2012) (citing *Davis*, 131 S. Ct. at 2427).  The district court reasoned that "a rule limiting *Davis* to binding precedent ignores the underlying rationale in *Davis* and *Herring*," because the Supreme Court "did not simply hold that law enforcement acted reasonably by relying on binding law, but also acknowledged the officer's reasonable reliance rendered his conduct inculpable."  *Id.* at *11 (citing *Davis*, 131 S. Ct. at 2427).  Because three of the four circuits to have decided the issue at the time had held that no warrant was required, the district court held that the officers' conduct was insufficiently culpable to justify the exclusionary rule.  *Id.*

at *11; *see also United States v. Luna-Santillanes*, 2012 WL 1019601, *9 n.5 (E.D. Mich. March 26, 2012).

In another case involving placement of a GPS device after the D.C. Circuit decided *Maynard*, *United States v. Katzin*, 732 F.3d 187, the Third Circuit, in a split opinion, declined to apply the good-faith exception. While acknowledging that the Supreme Court has advised that "exclusion has always been our last resort, not our first impulse" and that the court must consider the culpability and deliberateness of police conduct (*id.* at 205), the Third Circuit held that *Davis* extends the good-faith exception "only to acts that are explicitly sanctioned by clear and well-settled precedent" (*id.* at 207).[7]  It further held that *Knotts* and

---

[7] A district court in the Eastern District of Kentucky, *United States v. Lee*, 862 F. Supp. 2d 560 (E.D. Ky. 2012), also held that the good-faith exception did not apply where a tracker was installed in September 2011. As in *Katzin*, and in contrast to this case, the state of the law at the time of the GPS tracking in *Lee* was unsettled. In *Lee*, the agents installed their GPS without a warrant (1) after the *Maynard* court had issued its opinion on August 6, 2011, and (2) after the Supreme Court had granted certiorari in *Jones* on June 27, 2011. The Eastern District of Kentucky noted the unsettled state of the law and concluded that the good-faith exception should only apply if the agents relied on binding appellate precedent in force at the time of the agents' actions. *Lee*, 862 F. Supp. 2d at 570; *see also United States v. Taylor*, __ F. Supp. 2d __, 2013 WL 5817246, *7-8 (S.D. Ind. Oct. 29, 2013) (no application of good-faith exception where officers' proposed use of GPS device was inconsistent with limits implied by Seventh Circuit precedent).

*Karo* are distinguishable "given (1) the lack of a physical intrusion in those cases, (2) the placement by police of beepers inside containers, and (3) the marked technological differences between beepers and GPS trackers." *Id.* at 206. As a result, it held that "law enforcement's reliance on the beeper cases, standing on its own, cannot sufficiently insulates [sic] the GPS search in this case from the exclusionary rule." *Id.* at 208.

The *Katzin* court held that the government's position in that case, that even after *Maynard* the good-faith exception applied where "all but one of the courts of appeals to have addressed the issue had approved the warrantless installation and monitoring of a GPS device on a vehicle," read *Davis* too broadly. *Id.* at 208. It reasoned that officers can be expected to be aware of binding precedent in their own districts but that "it is not their duty for purposes of the exclusionary rule to parse and weigh [out-of-circuit] decisions." *Id.* at 209. In addition, the Third Circuit reasoned that opinions in other circuits should not dictate the Third Circuit's conclusions, even if only as to the applicability of the good-faith exception. *Id.* at 208.

The court also emphasized that this was particularly true where one circuit court, the D.C. Circuit in *Maynard*, had split from the consensus, in part because this would require a "case-by-case assessment" and "require courts ruling on suppression motions to discern what amounts to sufficient out-of-circuit authority for purposes of an objectively reasonable good faith belief." 732 F.3d at 209.

The *Katzin* court recognized that it must determine "whether law enforcement acted with an objectively reasonable good-faith belief that their conduct was lawful" and "consider whether the totality of the circumstances is greater than the sum of its attendant parts." *Id.* at 211. However, *Katzin* collapsed this inquiry into its holding that binding appellate precedent is required to invoke the good-faith exception, reasoning that such a requirement prevents law enforcement from "extrapolat[ing] their own constitutional rule" and assuming "this Circuit would automatically side with a majority of the minority of our sister circuits." *Id.* at 212.

*Katzin's* analysis has less force in this case. Here, there was no contrary authority—the circuits considering the issue were unanimous in holding that use of a slap-on GPS device did not implicate Fourth

36

Amendment concerns.[8]  Moreover, the *Katzin* court's aversion to a case-by-case assessment is misplaced.  The Supreme Court has specifically tasked lower courts with deciding "'the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal' in light of 'all of the circumstances.'" *Herring*, 555 U.S. at 145 (quoting *Leon*, 468 U.S. at 922 n.23).  This is necessarily a case-by-case assessment.

In dicta, the Seventh Circuit (in a case arising out of police conduct within the Eighth Circuit) expressed disapproval for an expansion of *Davis* beyond its holding that a search conducted in objectively reasonable reliance on binding appellate precedent would not be subject to the exclusionary rule.  *United States v. Martin*, 712 F.3d 1080, 1082 (7th Cir. 2013).  The *Martin* court did read *Davis* as an expansion of *Leon* and conceded that, based on its rationale, "the Supreme Court may decide to expand *Davis* in the coming years."  *Id.* Its treatment is cursory, however, noting that "[w]e need not

---

[8] The *Katzin* court argued that the Advisory Committee Notes to Federal Rule of Criminal Procedure 41(b) lost any persuasive value to the good-faith determination after the decision in *Maynard*.  732 F.3d 213 n.24.

definitively resolve this point in the context of this case." *Martin*, 712 F.3d at 1082.

### e. *Buford* does not aid Fisher's argument.

Before *Davis*, this Court had anticipated *Davis's* holding and held that the exclusionary rule is inappropriate when police rely on binding appellate precedent. *United States v. Buford*, 632 F.3d 264, 276 (6th Cir. 2011). In dicta, this Court stressed that "our precedent on a given point must be unequivocal before we will suspend the exclusionary rule's operation." *Id.* at 276 n.9. However, the *Buford* Court did not have the benefit of *Davis*, which refocused the standard on the culpability of law enforcement's conduct and did not limit application of the exclusionary rule to jurisdictions where there is binding appellate precedent. *Davis*, 131 S. Ct. at 2427-28.

Moreover, in *Buford*, this Court was not confronted with the question of relying on non-binding precedent from other jurisdictions that explicitly dealt with the practice in controversy. *Buford's* analysis seems more aimed at "dissuad[ing] law enforcement from constructing legal rationales based on cases analyzing supposedly analogous practices and arguing reliance on untested legal theories satisfies the

38

good faith exception." *Ford*, 2012 WL 5366049, at *11 n.10; *see also*

*Gordon*, 2013 WL 791622, at *8 ("In *Buford* and *Davis*, the Supreme

Court and the Sixth Circuit never foreclosed the possibility that officers

may, in good faith, rely on the 'unequivocal' or 'settled' precedents of

other circuits."). Indeed, in *United States v. Jarrell*, 68 F. App'x 622

(6th Cir. 2003), this Court held in an unpublished opinion that an

officer's reliance on thermal imaging evidence in advance of the

Supreme Court's decision in *Kyllo*, 533 U.S. 27 (2001), "at a time when

courts of appeals disagreed on the use of such imaging in the context of

the Fourth Amendment," and when the Sixth Circuit had not weighed

in on the issue, could not "be said to be objectively unreasonable." 68 F.

App'x at 626.

### D. Exclusion Here Is Inappropriate under *Herring* and *Davis*.

Fisher's argument that there was no binding Sixth Circuit

precedent on point misapprehends the standard the Supreme Court set

out in *Herring* and *Davis*. The question is not whether this Court or the

Supreme Court had definitively decided whether use of a slap-on GPS

device in a public place implicated Fourth Amendment rights—

although, if one or the other had, *Davis* says that would have been

enough.  Rather this Court is tasked with deciding "'the objectively

ascertainable question whether a reasonably well trained officer would

have known that the search was illegal' in light of 'all of the

circumstances.'"  *Herring*, 555 U.S. at 145 (quoting *Leon*, 468 U.S. at

922 n.23).  Those "circumstances" include the unanimity of then-

available appellate case law (binding or not), the commentary to the

Federal Rules of Criminal Procedure, trainings given to the officers, the

officers' previous use of slap-on GPS devices without the filing of any

prior suppression motion, advice from prosecutors and the Michigan

State Police legal department, and the Supreme Court's and this

Court's prior guidance in the beeper cases.  The police here did not

"exhibit 'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth

Amendment rights," and the deterrent value of exclusion therefore does

not outweigh the resulting costs.  *Davis*, 131 S. Ct. at 2427-28.

The district court properly denied the suppression motion.

## II.   SUPPRESSION OF THE EVIDENCE WAS LIKEWISE UNWARRANTED UNDER THE INEVITABLE DISCOVERY DOCTRINE.

In addition to the good-faith exception, the government argued in

the district court that the inevitable discovery or independent source

exception to the suppression rule applies to the cocaine found in Fisher's car.  (R.98: 1/18/13 Order, ID#511.)  The district court did not reach that issue (*id.*), but this Court may affirm on any basis supported by the record.  *United States v. Richardson*, 510 F.3d 622, 628 (6th Cir. 2007).

The independent source doctrine "rests on the proper balance to be struck between the interests of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime." *United States v. Howard,* 621 F.3d 433, 451 (6th Cir. 2010) (internal quotation marks and citations omitted).  "The exclusionary rule should put[ ] the police in the same, not a *worse,* position tha[n] they would have been in if no police error or misconduct had occurred."  *Id.* (internal quotation marks and citations omitted).  "Accordingly, where challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in absent any error or violation."  *Id.* (internal quotation marks and citations omitted).

The inevitable discovery doctrine "is an extrapolation from the independent source doctrine." *Id.* (internal quotation marks and

citation omitted). "As the Supreme Court has described the doctrine, '*[s]ince* the tainted evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been discovered.'" *Id.* (quoting *Murray v. United States,* 487 U.S. 533, 539 (1988) (emphasis in original)). "In other words, 'if the government can prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police, there is no rational basis to keep that evidence from the jury in order to ensure the fairness of the trial proceedings.'" *Id.* (quoting *Nix v. Williams,* 467 U.S. 431, 447 (1984)). It is the government's burden to establish by a preponderance of the evidence that any "tainted evidence would have been discovered by lawful means." *United States v. Alexander,* 540 F.3d 494, 502 (6th Cir. 2008) (internal quotation marks and citations omitted).

In this case, the police had sufficient information independent of the data derived from the GPS tracker to justify the traffic stop, including information CS-1 provided and extensive physical surveillance. CS-1 told UPSET when Fisher would be driving to Chicago, with whom, in what car, and when he would be returning with

cocaine. (*See* R. 69: Suppression Hearing Tr. at ID#321 (testimony of Det. Maki describing information obtained from CS-1).) In addition, the physical surveillance that the police conducted while Fisher drove to Chicago was not derived from the GPS. (*See* R. 69: Suppression Hearing Tr. at ID#325-29 (testimony of Det. Maki describing physical surveillance of vehicle).) Although the officers used GPS to assist in their physical surveillance, and did not actually follow Fisher during the entirety of his trip, the police knew, based on CS-1's statements and their physical surveillance that Fisher travelled to Chicago to purchase cocaine and would be returning to Michigan with it on June 14, 2010. (R.111: 10/11/12 Evid. Hearing, ID#637; R.69: 12/17/10 Evid. Hearing, ID#335-36, 338.) Thus, the officers had reasonable suspicion based on articulable facts to conduct the *Terry* stop, and the related discoveries were inevitable.

Moreover, the officers had the means to intercept Fisher with the cocaine even without the GPS tracker. The evidence at the suppression hearing demonstrated that, without the GPS information, they would have positioned surveillance officers on U.S. 41 between Green Bay and

Marinette in order to intercept the white Oldsmobile on June 14, 2010. (R.111: 10/11/12 Evid. Hearing, ID#637-38, 640-42.)

At least one circuit has held that use of a GPS device to keep track of a vehicle to effect an arrest does not result in suppression of evidence because the evidence sought to be suppressed is too "attenuated from the improper installation of the device." *Martin*, 712 F.3d at 1082. Cases like this one, where police used GPS to assist them in conducting physical surveillance, are distinct from the fact "situation in *Jones*, where the GPS data was used to establish a necessary link between the defendant and a cocaine stash house." *Id.* (citing *Jones*).  The court similarly distinguished several district court decisions suppressing evidence due to improper GPS installation because in each case the GPS data was evidence of a connection to the criminal scheme.  *United States v. Katzin*, 732 F.3d 187 (E.D. Pa. May 9, 2012) (GPS data tying suspects to string of pharmacy robberies); *United States v. Lee*, 862 F. Supp. 2d 560 (GPS tracking data indicating suspect was transporting marijuana); *United States v. Ortiz*, 878 F. Supp. 2d 515 (E.D. Pa. 2012) (GPS data connected defendant to complex drug trafficking scheme).

Here, as in *Martin*, officers used the GPS device to assist their physical surveillance and to effectuate an arrest. Because there was independent probable cause for a search of Fisher's vehicle, the connection between the GPS data and the cocaine discovered in Fisher's vehicle is too attenuated to require suppression.

## **CONCLUSION**

For the foregoing reasons, the Court should affirm the judgment of the district court. In the alternative, this Court may affirm on the grounds that discovery of the cocaine was inevitable.

Respectfully submitted,

PATRICK A. MILES, Jr.
United States Attorney

Dated: November 26, 2013      /s/ Sally J. Berens
SALLY J. BERENS
Assistant United States Attorney
P.O. Box 208
Grand Rapids, Michigan 49501-0208
(616) 456-2404

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 26, 2013, the foregoing document was electronically filed. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

I further certify that a copy of the foregoing document was mailed on this date to the opposing party if he/she was not registered to receive the document by the Court's electronic filing system.

/s/  Sally J. Berens
SALLY J. BERENS
United States Attorney's Office
Post Office Box 208
Grand Rapids, MI  49501-0208
(616) 456-2404

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(a)(7)(C), the undersigned certifies that this brief complies with the type-volume limitation and contains no more than 14,000 words as provided by FRAP 32(a)(7)(B).  A word count was made using Word 2010 and the brief contains 8,756 words.

PATRICK A. MILES, Jr.
United States Attorney


/s/  Sally J. Berens
SALLY J. BERENS
Assistant United States Attorney
P.O. Box 208
Grand Rapids, Michigan 49501-0208
(616) 456-2404

47

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| Description of Entry | Date | Record Entry Number | Page ID Number Range |
|---|---|---|---|
| Docket Sheet | NA | NA | |
| Complaint | 06/16/10 | 1 | 1-3 |
| Indictment | 07/20/10 | 4 | 6 |
| Motion to Suppress | 09/22/10 | 19 | 28-33 |
| Response to Motion by USA | 11/15/10 | 30 | 53-68 |
| Report and Recommendation | 01/11/11 | 40 | 99-127 |
| Order Adopting R&R | 02/11/11 | 44 | 145-65 |
| Plea Agreement | 02/14/11 | 45 | 166-74 |
| Motion to Suppress Evidence and Memo in Support | 06/29/12 | 77 | 383-91 |
| Report and Recommendation | 12/12/12 | 95 | 468-92 |
| Order Adopting R&R | 01/18/13 | 98 | 504-11 |
| Amended Judgment | 04/30/13 | 106 | 533-38 |
| Notice of Appeal | 05/13/13 | 107 | 539 |

| Description of Proceeding or Testimony | Date of Hearing | Record Entry Number | Page ID Number Range |
|---|---|---|---|
| Evidentiary Hearing | 12/17/10 | 69 | 321-29, 335-38, 356 |
| Evidentiary Heairng | 10/11/12 | 111 | 634-44, 60, 661-64, 670, 674-75 |